UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- x

JLT SPECIALTY INSURANCE SERVICES INC.,

                                      Plaintiff,

           v.

NFP PROPERTY & CASUALTY SERVICES, INC.,

                                 Defendant.

-------------------------------------------------------------------------- x

19 Civ. 3921 (KMK)

**ORAL ARGUMENT
REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO TRANSFER OR, IN THE ALTERNATIVE,
TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

The Parties ......................................................................................................................... 3

The 13 Employees ............................................................................................................. 4

The NY-Action .................................................................................................................. 6

The CA-Action................................................................................................................... 7

ARGUMENT ...................................................................................................................... 9

    I.   THE NY-ACTION SHOULD BE TRANSFERRED TO THE N.D.CAL. ....................9

        A. The NY-Action Could Have Been Brought in the N.D.Cal....................................9

        B. Transfer is an Appropriate Exercise of the Court's Discretion.............................10

            1. The Convenience of Witnesses and the Parties Favors Transfer .................... 11

            2. The Locus of Operative Facts Favors Transfer................................................ 13

            3. Trial Efficiency and the Interests of Justice Favor Transfer ........................... 14

            4. The Location and Accessibility of Documents Favors Transfer...................... 15

            5. The Ability to Compel Unwilling Witnesses Favors Transfer ........................ 16

            6. N.D.Cal.'s Familiarity with the Governing Law Favors Transfer .................. 17

            7. Plaintiff's Choice of Forum is Entitled to Little Weight,
               Thus Favoring Transfer.................................................................................... 17

            8. The Relative Means of the Parties is Neutral.................................................. 18

    II.  IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED.............19

        A. California Law Applies to Plaintiff's Claims.......................................................19

        B. JLT's Claims for Tortious Interference and Unfair Competition are
           Preempted by CUTSA (Claims I-III)....................................................................20

        C. The Complaint Fails to State a Claim for Tortious Interference
           with Existing and Prospective Business Relationships (Claim I) ..........................21

        D. The Complaint Fails to State a Claim for Tortious Interference
           with Contract (Claim II)........................................................................................22

        E. The Complaint Fails to State a Claim for Unfair Competition (Claim III)............23

        F. The Complaint Fails to State a Claim for Misappropriation of Confidential
           Information (Claim IV).........................................................................................24

CONCLUSION................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*2002 Lawrence R. Buchalter Alaska Tr. v. Philadelphia Fin. Life Assur. Co.*,
   96 F. Supp. 3d 182 (S.D.N.Y. 2015) .................................................................... 20

*A.F. Arnold & Co. v. Pacific Prof'l Ins., Inc.*,
   27 Cal. App. 3d 710 (1972) ................................................................................. 22

*Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*,
   15 Misc. 3d 776 (N.Y. Sup. Ct.), *aff'd as modified*, 44 A.D.3d 317 (1st Dep't 2007) ............ 22

*Aerotel, Ltd. v. Sprint Corp.*,
   100 F. Supp. 2d 189 (S.D.N.Y. 2000) .................................................................. 11

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
   457 F. Supp. 2d 474 (S.D.N.Y. 2006) .................................................................. 18

*AroChem Int'l, Inc. v. Buirkle*,
   968 F.2d 266 (2d Cir. 1992) ................................................................................ 19

*Arrow Elecs., Inc. v. Ducommun Inc.*,
   724 F. Supp. 264 (S.D.N.Y. 1989) ....................................................................... 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 19

*Astor Holdings, Inc. v. Roski*,
   2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) .......................................................... 13

*Babeo v. Majeed*,
   150 A.D.3d 942 (2d Dep't 2019) ........................................................................ 25

*Barge v. Daily Journal Corp.*,
   1996 WL 434561 (S.D.N.Y. Aug. 2, 1996) ......................................................... 13

*C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Arkansas Ltd. P'ship.*,
   175 B.R. 834 (S.D.N.Y. 1994) ............................................................................ 16

*City Solutions, Inc. v. Clear Channel Commc'ns*,
   365 F.3d 835 (9th Cir. 2004) .............................................................................. 24

*Colorado River Water Conservation Dist. v. United States*,
   424 U.S. 800 (1976) ............................................................................................ 15

*Comprehensive Care Corp. v. Bank of Tokyo Tr. Co.*,
   1991 WL 150220 (S.D.N.Y. July 30, 1991) .............................................. 9, 14, 15

*Copart, Inc. v. Sparta Consulting, Inc.*,
   277 F. Supp. 3d 1127 (E.D. Cal. 2017) ............................................................... 24

*CRST Van Expedited, Inc. v. Werner Enters.*,
  479 F. 3d 1099 (9th Cir. 2007) ............................................................................ 23

*D'Angelo v. Amtrak Railways*,
  2004 WL 2049262 (S.D.N.Y. Sept. 13, 2004) ..................................................... 11

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ......................................................................................... 22

*Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*,
  657 F. Supp. 1257 (S.D.N.Y. 1987) ..................................................................... 12

*Dickerson v. Novartis Corp.*,
  315 F.R.D. 18 (S.D.N.Y. 2016) .............................................................................. 4

*Edwards v. Arthur Andersen LLP*,
  44 Cal. 4th 937 (2008) ......................................................................................... 23

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*,
  872 F. Supp. 81 (S.D.N.Y. 1995) ......................................................................... 17

*ESPN, Inc. v. Quiksilver, Inc.*,
  581 F. Supp. 2d 542 (S.D.N.Y. 2008) .................................................................. 18

*Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*,
  928 F. Supp. 2d 735 (S.D.N.Y. 2013) .................................................................. 10

*Fedders Corp. v. Haier America Trading, LLC*,
  2002 WL 519733 (S.D.N.Y. Apr. 4, 2002) ........................................................... 20

*Fontana v. E.A.R.*,
  849 F. Supp. 212 (S.D.N.Y. 1994) ....................................................................... 10

*Gregory v. Alberson's, Inc.*,
  104 Cal. App. 4th 845 (Dist. Ct. 2002) ................................................................ 24

*Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*,
  50 N.Y.2d 183 (1990) ........................................................................................... 22

*Herbert Ltd. P'ship v. Elec. Arts Inc.*,
  325 F. Supp. 2d 282 (S.D.N.Y. 2004) .................................................................. 16

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*,
  241 F. Supp. 2d 246 (S.D.N.Y. 2002) .................................................................. 20

*Intria Corp. v. Intira Corp.*,
  2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000) ...................................................... 13

*Iragorri v. United Techs. Corp.*,
  274 F.3d 65 (2d Cir. 2001) ................................................................................... 18

*ITC Ltd. v. Punchgini, Inc.*,
  9 N.Y.3d 467 (2007) ............................................................................................. 24

*Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*,
2009 WL 2252116 (S.D.N.Y. July 28, 2009) ........................................................................ 13

*Jacobs v. Continuum Health Partners, Inc.*,
7 A.D.3d 312 (1st Dep't 2004) .............................................................................................. 22

*K.C. Multimedia*,
171 Cal. App. 4th 939 ............................................................................................................ 20

*Khoury v. Maly's of Calif., Inc.*,
14 Cal. App. 4th 612 (Dist. Ct. 1993) ................................................................................... 24

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ........................................................................................................ 21

*Miller v. Walters*,
46 Misc. 3d 417 (N.Y. Sup. 2014) ......................................................................................... 24

*Neil Bros. v. World Wide Lines, Inc.*,
425 F. Supp. 2d 325 (E.D.N.Y. 2006) .................................................................................... 15

*In re Nematron Corp. Sec. Litig.*,
30 F. Supp. 2d 397 (S.D.N.Y. 1998) ...................................................................................... 15

*Nostrum Pharm., LLC v. Manesh Dixit, Ph.D.*,
2015 WL 2208167 (S.D.N.Y. May 8, 2015) .......................................................................... 19

*Opera Sols., LLC v. Schwan's Home Serv., Inc.*,
2015 WL 1378968 (S.D.N.Y. Mar. 25, 2015) ........................................................................ 17

*Quelimane Co. v. Stewart Title Guar. Co.*,
19 Cal.4th 26 (1998) .............................................................................................................. 23

*Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*,
2005 WL 236440 (S.D.N.Y. Feb. 1, 2005) (*Karas, J.*) ....................................................... 11

*Reed Constr. Data Inc. v. McGraw-Hill Cos.*,
745 F. Supp. 2d 343 (S.D.N.Y. 2010) .................................................................................... 25

*Reeves v. Hanlon*,
33 Cal. 4th 1140 (2004) .................................................................................................. 15, 22

*Robert Half Int'l, Inc. v. Ainsworth*,
68 F. Supp. 3d 1178 (S.D. Cal. 2014) .................................................................................... 20

*Robertson v. Cartinhour*,
2011 WL 5175597 (S.D.N.Y. Oct. 28, 2011) ..................................................................... 9, 10

*Royal & Sunalliance v. British Airways*,
167 F. Supp. 2d 573 (S.D.N.Y. 2001) .................................................................................... 14

*Ruder & Finn v. Seaboard Sur. Co.*,
52 N.Y.2d 663 (1981) ............................................................................................................ 24

*Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC.*,
  2019 WL 3252752 (S.D.N.Y. July 19, 2019) ........................................................ 18

*Sills v. Ronald Reagan Presidential Found., Inc.*,
  2009 WL 1490852 (S.D.N.Y. May 27, 2009) .................................................. 14, 18

*Six Dimensions, Inc. v. Perficient, Inc.*,
  2017 WL 10676897 (S.D.N.Y. Mar. 28, 2017) ...................................................... 13

*Smart Skins LLC v. Microsoft Corp.*,
  2015 WL 1499843 (S.D.N.Y. Mar. 27, 2015) ......................................................... 4

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002) ................................................................................. 19

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) ................................................................................. 19

*Stechler v. Sidley, Austin Brown & Wood, L.L.P.*,
  382 F. Supp. 2d 580 (S.D.N.Y. 2005) .................................................................. 19

*In re Stillwater Min. Co. Sec. Litig.*,
  2003 WL 21087953 (S.D.N.Y. May 12, 2003) ..................................................... 15

*Study Logic, LLC v. Farmer Bros. Co.*,
  2019 WL 3412114 (E.D.N.Y. July 29, 2019) ....................................................... 17

*Torah Soft Ltd. v. Drosnin*,
  224 F. Supp. 2d 704 (S.D.N.Y. 2002) ............................................................ 19, 20

*Ullmannglass v. Oneida, Ltd.*,
  86 A.D.3d 827 (3d Dep't 2011) ............................................................................ 23

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ............................................................................................... 9

*Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*,
  774 F. Supp. 858 (S.D.N.Y. 1991) ...................................................................... 10

*Williams v. City of N.Y.*,
  2006 WL 399456 (S.D.N.Y. Feb. 21, 2006) ........................................................ 14

Statutes

28 U.S.C. § 1404(a) ..................................................................................... 1, 9, 13

28 U.S.C.A. § 1391(b)(1) .................................................................................. 9

28 U.S.C.A. § 1391(b)(2) .................................................................................. 9

28 U.S.C.A. § 1391(c)(2) ................................................................................ 10

Cal. Bus. & Prof. Code § 16600 ..................................................................... 1, 15

Cal. Civ. Code § 3426...................................................................................................... 3

Rules

Fed. R. Civ. P. 12(b)(6)........................................................................................... 1, 19

Fed. R. Civ. P. 45(c)(1)................................................................................................ 17

Defendant NFP Property & Casualty Services, Inc. ("NFP") respectfully submits this memorandum of law in support of its motion to transfer this action (the "NY-Action") to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. § 1404(a), or, in the alternative, to dismiss Plaintiff JLT Specialty Insurance Services Inc.'s ("JLT") May 1, 2019 complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## PRELIMINARY STATEMENT

This action should be transferred to the Northern District of California ("N.D.Cal."). JLT, a Delaware corporation with a principal place of business in Chicago, Illinois, simultaneously commenced two federal court actions – one in the Southern District of New York against NFP, and one in the N.D.Cal. against certain NFP's employees – asserting claims *arising out of the same purported facts and conduct*.[2] JLT's coordinated tactic (the same law firm represents JLT in both actions) is pure gamesmanship employed at the expense of witnesses and defendants in both actions, and judicial economy. It also is a transparent attempt to undermine free competition and subvert California's strong public policy favoring employee freedom of mobility.[3]

In *JLT Specialty Insurance Services, Inc. v. Gary Pestana, et al.*, No. 3:19-CV-02427-

---

[1] NFP also submits the following in support of its motion: the Declaration of Daniel Field, dated October 25, 2019 ("Field Decl."), and the Declarations of Veronica Moo, dated October 24, 2019 ("Moo Decl."), Gary Pestana, dated October 22, 2019 ("Pestana Decl."), Ramy Morcos, dated October 24, 2019 ("Morcos Decl."), Dustin Smith, dated October 23, 2019 ("Smith Decl."), Sarah Sherman, dated October 24, 2019 ("Sherman Decl."), Timothy Edwards, dated October 24, 2019 ("Edwards Decl."), Hermilia Martinez, dated October 23, 2019 ("H. Martinez Decl."), Jason McCarrick, dated October 23, 2019 ("McCarrick Decl."), Stephanie Olloqui, dated October 23, 2019 ("Olloqui Decl."), Genevieve Lopez, dated October 23, 2019 ("Lopez Decl."), Lesa Medeiros, dated October 24, 2019 ("Medeiros Decl."), Joshua Forbes, dated October 23, 2019 ("Forbes Decl."), Margaret Martinez, dated October 23, 2019 ("M. Martinez Decl."), and Jessica Nelson, dated October 24, 2019 ("Nelson Decl.").

[2] *See* Field Decl., Exs. 1 & 2; *compare with* ECF # 1.

[3] California has demonstrated this strong public policy by passing legislation deeming every contract, unless a specific exception is met, that restrains someone "from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600.

MMC (the "CA-Action"), JLT contends that four of its former employees who worked at JLT's California offices, but now work for NFP in its California offices *i.e.*, Gary Pestana, Ramy Morcos, Dustin Smith, and Sarah Sherman (collectively, the "CA-Employee-Defendants"), allegedly: (i) accessed JLT's computer systems and downloaded JLT's confidential, proprietary and/or trade secret information; (ii) used such information to help NFP compete with JLT; and (iii) failed to return such information in violation of purported contractual obligations. *See* Field Decl., Ex. 2 at ¶¶ 5–8.

Similarly, the NY-Action is premised primarily on the conduct of the CA-Employee-Defendants, plus nine additional former JLT employees (now NFP employees) (collectively, and together with the CA-Employee-Defendants, the "13 Employees"). ***Ten*** of the 13 Employees resided in California at the time that both actions were commenced (the "CA-Employees"), while only *three* resided in New York.[4] Some or all of the 13 Employees allegedly: (i) downloaded purported confidential information to external hard drives; (ii) used that information to solicit JLT's customers for the benefit of NFP; (iii) met with and discussed clientele information with NFP representatives; and/or (iv) took steps to conceal their conduct. *See* ECF # 1 at ¶¶ 48–145. While the Complaint intentionally avoids stating *where* the allegedly improper conduct took place, the vast majority of such conduct could have occurred, if at all, ***only in California*** where the CA-Employees (and JLT's and NFP's San Francisco and Los Angeles offices) are located. Moreover, the Complaint fails to allege any connection to New York except that NFP is incorporated there, three of the 13 employees reside in New York, and one of the allegedly "improperly solicited" clients is in New York.

It is undeniable that JLT's claims in the NY-Action could have been brought in the

---

[4] Nine of the CA-Employees presently live in California and work in NFP's California offices.

N.D.Cal. Both JLT and NFP are subject to personal jurisdiction in the N.D.Cal. JLT's claims in both cases arise from the same purported facts and conduct that took place primarily in California. And most witnesses (and certainly the most critical witnesses, *i.e.*, the four CA-Employee-Defendants) resided in California.

Nevertheless—to avoid California's strong public policy favoring employees' rights and free competition—JLT commenced bicoastal litigation so that it could assert its unfair competition claims in New York instead of California. This comes at a significant cost to the parties and the Courts. It materially increases the litigation costs for NFP and the California-Employee Defendants, duplicating the discovery and litigation expenses. And it threatens both sides with inconsistent adjudications.

As detailed below, the convenience of witnesses and parties, the locus of the operative facts, and the interests of judicial economy, among other factors, heavily favor transfer of the NY-Action to the N.D.Cal. where it may be consolidated or coordinated with the CA-Action. Indeed, transfer is an appropriate exercise of the Court's discretion to prevent the waste of time, energy and money, and protect the parties, witnesses and the Court against unnecessary inconvenience, facilitate efficient, economical, and expeditious discovery and proceedings, and avoid inconsistent results.

Alternatively, the Complaint should be dismissed as California's Uniform Trade Secrets Act, Cal. Civ. Code § 3426 ("CUTSA"), preempts JLT's claims for tortious interference and unfair competition, and/or the Complaint fails to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

### *The Parties*

**JLT** is a Delaware corporation with a principal place of business in Chicago, Illinois, and maintains offices throughout the United States, including in San Francisco and Los Angeles,

California. ECF # 1 at ¶¶ 16, 21, 35. JLT is the U.S. platform of the United Kingdom based advisor and broker, JLT Group, a Marsh & McLennan company. *See* https://www.jlt.com/en-us/

**NFP** is a national provider of insurance, reinsurance, employee benefits advice and brokerage services. Moo Decl. at ¶ 3. NFP is incorporated in New York, with offices throughout the United States, including in San Francisco and Los Angeles, California, where it is duly qualified to conduct business and has a designated agent for service of process. *Id.* at ¶¶ 3, 4.

### *The 13 Employees*

The NY-Action is premised on the conduct of the 13 Employees, who left JLT to join NFP, allegedly obtained "confidential information" and used it to solicit JLT's customers at the urging and for the benefit of NFP. ECF # 1 at ¶¶ 1, 9. The 13 Employees are:

(i) **Gary Pestana ("Pestana")**, a former executive vice president and practice leader in JLT's real estate practice, who worked in JLT's Los Angeles, CA office. Pestana is now employed by NFP in its Los Angeles, CA office and is one of the CA-Employee-Defendants. At all relevant times, Pestana was, and remains, a *California resident*. Pestana Decl. at ¶¶ 1–6;[5] ECF #1, ¶ 21.

(ii) **Ramy Morcos ("Morcos")**, a former vice president in JLT's real estate practice who worked in JLT's Los Angeles, CA office. Morcos is now employed by NFP in its Los Angeles, CA office and is one of the CA-Employee-Defendants. At all relevant times, Morcos was, and remains, a *California resident*. Morcos Decl. at ¶¶ 1–5; ECF #1 at ¶ 55.

(iii) **Dustin Smith ("Smith")**, a former senior vice president in JLT's real estate practice who worked in JLT's Los Angeles, CA office. Smith is now employed by NFP in its Los Angeles, CA office and is one of the CA-Employee-Defendants. At all relevant times, Smith was, and remains, a *California resident*. Smith Decl., ¶¶ 1–5; ECF #1, ¶ 55.

(iv) **Sarah Sherman ("Sherman")**, a former executive vice president and practice leader in JLT's real estate practice who worked in JLT's San Francisco, CA office. Sherman presently is on sabbatical, is one of the CA-Employee-Defendants, and is now a resident of Massachusetts. At all relevant times, Sherman was a *California resident*. Sherman Decl., ¶¶ 2–6; ECF #1, ¶¶ 35–36.

(v) **Timothy Edwards ("Edwards")**, a former Senior vice president in JLT's property &

---

[5] Courts routinely consider witness declarations when determining motions to transfer. *See, e.g., Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 27 (S.D.N.Y. 2016); *Smart Skins LLC v. Microsoft Corp.*, 2015 WL 1499843, at *7 (S.D.N.Y. Mar. 27, 2015).

casualty group who worked in JLT's San Francisco, CA office. Edwards is now employed by NFP in its San Francisco, CA office. At all relevant times, Edwards was, and remains, a *California resident*. Edwards Decl., ¶¶ 1–3; ECF #1, ¶ 53.

(vi)    **Hermilia Martinez ("<u>H. Martinez</u>")**, a former senior account specialist in JLT's property & casualty group who worked in JLT's San Francisco, CA office. Martinez is now employed by NFP in its San Francisco, CA office. At all relevant times, H. Martinez was, and remains, a *California resident*. H. Martinez Decl., ¶¶ 1–3; ECF #1, ¶ 53.

(vii)    **Jason McCarrick ("<u>McCarrick</u>")**, a former assistant vice president in JLT's property & casualty group who worked in JLT's San Francisco, CA office. McCarrick is now employed by NFP in its San Francisco, CA office. At all relevant times, McCarrick was, and remains, a *California resident*. McCarrick Decl. ¶¶ 1–3; ECF #1, ¶ 53.

(viii)    **Stephanie Olloqui ("<u>Olloqui</u>")**, a former account manager in JLT's property & casualty group who worked in JLT's Los Angeles, CA office. Olloqui is now employed by NFP in its Los Angeles, CA office. At all relevant times, Olloqui was, and remains, a *California resident*. Olloqui Decl., ¶¶ 1–3; ECF #1, ¶ 53.

(ix)    **Genevieve Lopez ("<u>Lopez</u>")**, a former account manager in JLT's real estate practice who worked in JLT's Los Angeles, CA office. Lopez is now employed by NFP in its Los Angeles, CA office. At all relevant times, Lopez was, and remains, a *California resident*. Lopez Decl., ¶¶ 1–3; ECF #1, ¶ 55.

(x)    **Lesa Medeiros ("<u>Medeiros</u>")**, a former vice president in JLT's real estate practice who worked in JLT's San Francisco, CA office. Medeiros is now employed by NFP in its San Francisco, CA office. At all relevant times, Medeiros was, and remains, a *California resident*. Medeiros Decl., ¶¶ 1–3; ECF #1, ¶ 55.

(xi)    **Joshua Forbes ("<u>Forbes</u>")**, a former senior vice president in JLT's property & casualty group who worked in JLT's New York, NY office. In his role at JLT, Forbes had few, if any, oversight responsibilities, did not manage any employees, and infrequently interfaced with clients. There is no overlap between the clients he serviced while at JLT versus those he has serviced, and continues to service, at NFP. At all relevant times, Forbes was, and remains, a resident of New York. Forbes Decl., ¶¶ 1–5; ECF #1, ¶ 53.

(xii)    **Margaret Martinez ("<u>M. Martinez</u>")**, a former assistant vice president in JLT's property & casualty group who was based in JLT's New York, NY office. In her role at JLT, M. Martinez served in a support-based position, had little oversight and decision-making authority, and was not involved in obtaining clients for JLT. There is no overlap between the clients she serviced while at JLT versus those she services at NFP. At all relevant times, M. Martinez was, and remains, a resident of New York. M. Martinez Decl., ¶¶ 1–3; ECF #1, ¶ 53.

(xiii)    **Jessica Nelson ("<u>Nelson</u>")**, a former account manager in JLT's property & casualty group who was based in JLT's New York office. In her role at JLT, Nelson had no oversight or managerial responsibilities, and for over two years served in a clerical role as an executive assistant. At all relevant times, Nelson was, and remains, a resident of New

York. Nelson Decl., ¶¶ 1–3; ECF #1, ¶ 53.

### *The NY-Action*

On May 1, 2019, JLT filed the Complaint asserting claims against NFP for tortious interference with existing and prospective business relationships and contracts, unfair competition, and misappropriation of confidential information. ECF # 1 at ¶¶ 116–145. JLT's claims against NFP arise from the central allegation that NFP lured away the 13 Employees and wrongfully obtained allegedly "confidential information" to solicit certain JLT customers. *Id.*

Ten of the 13 Employees (*i.e.*, the CA-Employees) were residents of California, worked at JLT's California offices and were then hired to work at NFP's California offices.[6] Thus, the central purported facts underlying JLT's claims involve conduct that could have occurred, if at all, ***only in California***. For example, JLT alleges that: (i) between March 11, 2019 and March 21, 2019, Pestana connected at least four USB drives and an iPhone to his JLT computer (located in JLT's Los Angeles office) and accessed a Dropbox.com account from that computer (*id.* at ¶ 58); (ii) on or about March 14 and 21, 2019, Pestana allegedly accessed JLT's files related to "Client B," and numerous other broker of record letters (*id.* at ¶ 59); (iii) between March 14, 2019 and March 20, 2019, Sherman (then a California resident) connected her iPhone and numerous USB drives to her computer (located in JLT's San Francisco office) (*id.* at ¶ 60); (iv) between March 20, 2019 and his March 26, 2019 resignation, Morcos (a California resident) connected at least 6 unique USB drives, an iPhone and an iPad to his computer (located in JLT's Los Angeles office) (*id.* at ¶ 62); and (v) specific CA-Employee-Defendants and CA-Employees deleted data from their iPhones and iPads (located in California), and Morcos and Smith (both California residents) failed to provide JLT (in California) with their respective passcodes to

---

[6] *Id.* at ¶¶ 53–56; Pestana Decl. at ¶¶ 1–3; Morcos Decl. at ¶¶ 1–3; Smith Decl. at ¶¶ 1–3; Sherman Decl. at ¶¶ 2–4; Edwards Decl. at ¶¶ 1–3; H. Martinez Decl. at ¶¶ 1–3; McCarrick Decl.

access data on their JLT-issued devices. *Id.* at ¶¶ 68–70.

The Complaint also contends that certain former JLT clients (anonymously labeled Clients "A", "B", and "C," as well as an Arizona-based client, a San Francisco-based client, and a New York-based client) were improperly solicited. *Id.* at ¶¶ 71–105. According to the Complaint, the allegedly improper solicitations of Clients A, B, and C, were committed by Pestana, a California resident. *Id.* at ¶¶ 21, 81–91. With respect to the Arizona-based client, the Complaint fails to specify who engaged in improper conduct, however, in the CA-Action JLT alleges that the client had been serviced by the CA-Employee-Defendants. Field Decl., Ex. 2 at ¶ 91. The San Francisco-based client allegedly was serviced by Sherman (then a California resident). ECF # 1 at ¶¶ 35, 96. And as for the New York-based client, the broker of record "letter notification" confirming that NFP replaced JLT as the exclusive broker of record, was copied to Dustin Smith (a California resident). *Id.* at ¶¶ 98, 99.

In contrast, other than alleging that two New York employees (*i.e.*, Nelson and M. Martinez) "wiped the data from their own JLT-issued iPhones and iPads" (*id.* at ¶ 69), the Complaint makes no mention of any allegedly improper conduct occurring in New York. Tellingly, unlike the CA-Employee-Defendants, no New York employee was sued by JLT.

### *The CA-Action*

Just two days after commencing the NY-Action, JLT commenced the CA-Action against the CA-Employee-Defendants, asserting, among other things, claims for breach of contract and misappropriation of trade secrets, arising from the same purported facts underlying the NY-Action. *See generally* Field Decl., Ex. 1. On May 31, 2019, JLT filed an amended complaint in the CA-Action the ("CA-Complaint"), which continues to assert such claims arising from the

at ¶¶ 1–3; Olloqui Decl. at ¶¶ 1–3; Lopez Decl. at ¶¶ 1–3; Medeiros Decl. at ¶¶ 1–3.

same purported facts. *See generally* Field Decl., Ex. 2. For example, the CA-Complaint alleges that the CA-Employee-Defendants breached the same "California contracts" at issue in the NY-Action, and misappropriated, in California, what presumably is the same "confidential information" at issue in the NY-Action. *Compare* Field Decl., Ex. 2 at ¶¶ 111–158 *with* ECF # 1 at ¶¶ 116–145. Indeed, the CA-Complaint repeats **verbatim** (or near verbatim) many allegations asserted in the NY-Action, for example:

| NY-Action Complaint | CA- Complaint |
|---|---|
| "On or about March 1, 2019 Pestana had lunch with one or more representatives of NFP." ECF # 1 at ¶ 48 | "On or about March 1, 2019, Defendant Pestana had lunch with one or more representatives of NFP." Field Decl., Ex. 2 at ¶ 55 |
| "Upon information and belief, Pestana discussed the names of his clients and colleagues with NFP." ECF # 1 at ¶ 49 | "Upon information and belief, Defendant Pestana discussed the names of his clients and colleagues with NFP…" Field Decl., Ex. 2 at ¶ 56 |
| "[S]herman connected her iPhone and numerous USB devices and drives to her JLT computer." ECF # 1 at ¶ 60 | "Defendant Sherman connected her iPhone and numerous USB devices and drives to her JLT computer…" Field Decl., Ex. 2 at ¶ 63 |
| "Morcos downloaded to his various USB drives client pricing, audit, loss, risk and coverage information related to numerous JLT clients…" ECF # 1 at ¶ 63 | "Defendant Morcos downloaded to his various USB drives client pricing, audit, loss, risk and coverage information related to numerous JLT clients…" Field Decl., Ex. 2 at ¶ 65 |
| "Using his JLT computer, Morcos also accessed personal Dropbox and Google Drive cloud storage accounts, where, upon information and belief, he uploaded JLT's confidential information to his personal accounts." ECF # 1 at ¶ 64 | "Using his JLT computer, Defendant Morcos also accessed personal Dropbox and Google Drive cloud storage accounts, where, upon information and belief, he uploaded JLT's confidential information to his personal accounts." Field Decl., Ex. 2 at ¶ 66 |

In addition, JLT alleges in both actions that Morcos and Smith "fail[ed] to provide JLT with their passcodes, which would allow JLT to access the data on their JLT-issued devices." *Compare* Field Decl., Ex. 2 at ¶ 69 *with* ECF # 1 at ¶ 70. And the CA-Complaint takes issue with the solicitation of the same clients at issue in the NY-Action. *Compare* Field Decl., Ex. 2 at ¶¶ 72–97 *with* ECF # 1 at ¶¶ 72–99.[7]

---

[7] Both complaints refer to clients "A," "B," and "C." The Arizona hospitality client is referred to

**ARGUMENT**

## I.    THE NY-ACTION SHOULD BE TRANSFERRED TO THE N.D.CAL.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citation omitted). Further, when related claims are already being adjudicated, Courts have long recognized the value of transfer to, "facilitate[] efficient, economical, and expeditious pre-trial proceedings and discovery," and to avoid, "duplicitous litigation and inconsistent results." *See Comprehensive Care Corp. v. Bank of Tokyo Tr. Co.*, 1991 WL 150220, at *5 (S.D.N.Y. July 30, 1991).

Courts employ a two-step inquiry to decide motions to transfer venue under § 1404(a). The first step is determining whether the action could have been brought in the transferee district (*i.e.*, the N.D.Cal.). *Robertson v. Cartinhour*, 2011 WL 5175597, at *3 (S.D.N.Y. Oct. 28, 2011). If so, the Court must determine whether transfer would be an appropriate exercise of its discretion. *Id.* The present motion easily meets both prongs of the inquiry.

### A.    The NY-Action Could Have Been Brought in the N.D.Cal.

A civil action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…." 28 U.S.C.A. § 1391(b)(1) & (2). For purposes of venue, an "entity with the capacity to sue and be

---

as "Client D" in the CA-Complaint, the San Francisco client is referred to as "Client E" in the CA-Complaint, and the New York client is referred to as "Client F" in the CA-Complaint).

sued in its common name under applicable law … shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question …." 28 U.S.C.A. § 1391(c)(2).

Here, it is irrefutable that the NY-Action could have been brought in the N.D.Cal. First, NFP: (i) maintains an office in San Francisco and, therefore, resides in San Francisco; (ii) is subject to personal jurisdiction in the N.D.Cal.; and (iii) has an agent to accept service of process there. *See* Moo Decl. at ¶ 3–4. Second, as detailed above, a substantial part of the purported events giving rise to JLT's claims, including the vast majority of alleged wrongdoing, could have occurred only in California. *See supra* at pp. 2–8. In fact, JLT concedes that, with respect to its claims in the CA-Action (arising out of the same purported facts alleged here), venue is appropriate in the N.D.Cal. because "a substantial part of the events or omissions giving rise to [such claims] arose [there]." Field Decl., Ex. 2 at ¶ 17.[8]

## B.      Transfer is an Appropriate Exercise of the Court's Discretion

In determining whether transfer is an appropriate exercise of discretion, Courts consider: (i) the convenience of the witnesses and parties; (ii) the locus of operative facts; (iii) trial efficiency and the interests of justice; (iv) the location of relevant documents and the relative ease of access to sources of proof; (v) the availability of process to compel the attendance of unwilling witnesses; (vi) the forum's familiarity with the governing law; (vii) the weight accorded the plaintiff's choice of forum; and (viii) the relative means of the parties. *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013). While each factor is considered, a heavy emphasis is placed on the convenience of witnesses and the locus of the operative facts. *Robertson*, 2011 WL 5175597, at *4; *Fontana v.*

---

*Compare* ECF # 1 at ¶¶ 71–99 *with* Field Decl., Ex. 2 at ¶¶ 72–97.

*E.A.R.*, 849 F. Supp. 212, 214 (S.D.N.Y. 1994); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991). Indeed, "[t]he convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000). As explained below, ***seven of the eight factors*** (including convenience of the witnesses and the locus of the operative facts) favor transfer, and the eighth factor is neutral.

### 1. The Convenience of Witnesses and the Parties Favors Transfer

In determining witness convenience, "courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." *D'Angelo v. Amtrak Railways*, 2004 WL 2049262, at *3 (S.D.N.Y. Sept. 13, 2004). This Court's decision in *Ravenwoods Invest. Co., L.P. v. Bishop Capital Corp.*, 2005 WL 236440, at *4 (S.D.N.Y. Feb. 1, 2005) (*Karas, J.*), is particularly instructive. There, the Court granted a motion to transfer where: (i) nine of defendant's potential witnesses lived in or near the proposed transferee forum; and (ii) plaintiff identified only one witness who resided in the transferor forum (whose testimony would not be as complex, extensive, or controversial as the other witnesses). *Id.*

Here, of the 13 Employees, ***ten resided in California at all relevant times***.[9] Each has submitted sworn declarations attesting to the inconvenience of the Southern District of New York, and the convenience of the N.D.Cal. if compelled to testify at trial.[10] Further, the most critical witnesses (*i.e.*, the CA-Employee-Defendants) presently reside or resided in California

---

[8] Plaintiff does not contest that its claims could have been brought in the N.D.Cal. *See* ECF # 15.

[9] *See* ECF # 1 at ¶ 21, 35, 53–56; Pestana Decl. at ¶ 1; Morcos Decl. at ¶ 1; Smith Decl. at ¶ 1; Sherman Decl. at ¶ 2; Edwards Decl. at ¶ 1; H. Martinez Decl. at ¶ 1; McCarrick Decl. at ¶ 1; Olloqui Decl. at ¶ 1; Lopez Decl. at ¶ 1; Medeiros Decl. at ¶ 1.

[10] *See* Pestana Decl. at ¶ 6; Morcos Decl. at ¶ 5; Smith Decl. at ¶ 5; Sherman Decl. at ¶¶ 6–7; Edwards Decl. at ¶ 6; H. Martinez Decl. at ¶ 6; McCarrick Decl. at ¶ 6; Olloqui Decl. at ¶ 7; Lopez Decl. at ¶ 6; Medeiros Decl. at ¶ 6.

when this action was commenced. *See supra* at pp. 4–5. Similarly, based on the allegations in the Complaint, the testimony of the other CA-Employees is likely to be more critical than the testimony of the New York employees. Moreover, requiring the ten CA-Employees to testify in New York would impose unnecessary expenses given the availability of the N.D.Cal. *See Designs By Glory, Ltd. v. Manhattan Creative Jewelers, Inc.*, 657 F. Supp. 1257, 1259 (S.D.N.Y. 1987) (recognizing that Texas, where five non-party witnesses lived, was a more apt forum as procuring their testimony in New York would have been "unnecessarily expensive").

While the Complaint references three potential witnesses who reside in New York, their testimony, if any, based on the allegations in the Complaint, certainly would not be as pertinent to this action as the CA-Employee-Defendants' testimony (or even the other CA-Employees' testimony). Indeed, all three of the New York employees had limited, if any, oversight or managerial responsibility. *See* M. Martinez Decl. at ¶ 4; Nelson Decl. at ¶ 3; Forbes Decl. at ¶ 4. Further, for two of the New York employees there is no overlap between the clients serviced while they were at JLT and the clients they currently serve at NFP. *See* M. Martinez Decl. at ¶ 5; Forbes Decl. at ¶ 5.[11]

Additionally, the N.D.Cal. is a more convenient forum for the parties, both of which: (i) maintain offices in the N.D.Cal.; and (ii) are already involved (JLT directly and NFP indirectly) in litigating claims involving the same operative "facts" alleged in the NY-Action. *See* ECF # 1 Field Decl. at Ex. 2; Moo Decl. at ¶ 3–7. Indeed, the same law firms represent the parties in both actions. As a result, this critical factor favors transfer.

---

[11] JLT's initial disclosures in the CA-Action identify only two "witnesses," who appear to be residents of California and Illinois, respectively. *See* Field Decl., Ex. 3 at 3 (listing Joseph Pochron and Stephanie Nallen as "Witnesses").

### 2. The Locus of Operative Facts Favors Transfer

The locus of the operative facts is also a "primary factor in determining a § 1404(a) motion to transfer," and "*substantially favors transfer*" where the plaintiff has not shown that the operative facts arose in the transferor forum. *Everlast*, 928 F. Supp. 2d at 745 (emphasis added). For tort claims, Courts look to "the place where the events at issue occurred," to determine the locus of operative facts. *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, 2009 WL 2252116, at *6 (S.D.N.Y. July 28, 2009). For example, in *Barge v. Daily Journal Corp.*, 1996 WL 434561, at *4 (S.D.N.Y. Aug. 2, 1996), where the plaintiff asserted claims for misappropriation of confidential information and unfair competition, the Court held that because the events giving rise to the claims arose in the transferee forum, transfer was favored. *Id.*[12]

Here, JLT's claims sound in tort, nearly all the alleged events and conduct at issue occurred in California, ten of the 13 Employees allegedly involved were located in California at the relevant time, and presumably the vast majority of the relevant "Non-Solicitation and Confidentiality Agreements" were entered into in California and were allegedly breached in California. *See* ECF # 1 at 116–145.[13] As a result, the locus of operative facts is California, and this critical factor weighs heavily in favor of transfer.

---

[12] *See also*, *Intria Corp. v. Intira Corp.*, 2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000), at *5 (holding that transfer of claims for tortious interference with business relations and unfair competition to California is favored where New York activity not alleged); *Six Dimensions, Inc. v. Perficient, Inc.*, 2017 WL 10676897, at *6 (S.D.N.Y. Mar. 28, 2017) (holding venue improper for tortious interference and unfair competition claims where no improper solicitations were made within the Court's district); *Fontana*, 849 F. Supp. at 214 (holding transfer appropriate where actions causing plaintiff's injury occurred in the transferee forum).

[13] Plaintiff's reliance on *Astor Holdings, Inc. v. Roski*, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002) for the proposition that the, "venue statute … does not require venue in the district with the most substantial contacts to the dispute" (*see* ECF # 15 at p. 2), is misplaced as NFP does not contend that transfer is *required*. NFP respectfully *requests* transfer of the NY-Action to the N.D.Cal., and contends that transfer is an appropriate use of the Court's *discretion*. Plaintiff's argument is tacit recognition that the N.D.Cal. has the most substantial contacts to this dispute.

### 3.    <u>Trial Efficiency and the Interests of Justice Favor Transfer</u>

When determining which forum would provide for greater trial efficiency and judicial economy, Courts heavily weigh whether there is a related action in the transferee district and whether the actions can be consolidated. *See Williams v. City of N.Y.,* 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006). Indeed, when related claims are already being adjudicated elsewhere, Courts have long recognized the appropriateness of transfer to, "facilitate efficient, economical, and expeditious pre-trial proceedings and discovery," and to avoid, "duplicitous litigation and inconsistent results." *See Comprehensive Care Corp.*, 1991 WL 150220, at *5. In *Williams*, the Court held that this factor favored transfer where the actions in the transferor and transferee forums involved the same plaintiff, similar legal and factual issues, and the defendant anticipated calling the same witnesses in its defense in both actions. *Williams*, 2006 WL 399456, at *3.

Here, both actions involve the same plaintiff (JLT) and, given the similar legal and factual issues, it is likely that NFP and the CA-Employee-Defendants will call the same witnesses. Moreover, NFP intends to seek consolidation of the actions upon transfer.[14] Further, allowing both actions to proceed in separate districts may lead to inconsistent adjudications. In the CA-Action, JLT asserts breach of contract claims against the CA-Employee-Defendants based on the alleged Non-Solicitation and Confidentiality Agreements they entered into with JLT. *See* Field Decl. 2 at 111–131. In the NY-Action, JLT claims NFP tortiously interfered with

---

[14] This Court also considers disparities in docket sizes and congestion when analyzing this factor (*see Sills v. Ronald Reagan Presidential Found., Inc.*, 2009 WL 1490852, at *12 (S.D.N.Y. May 27, 2009)), and has made clear the congestion of this Court's docket, and that transfer is favored when retention of the action would delay the adjudication of cases brought by parties compelled to sue in New York. *See Royal & Sunalliance v. British Airways*, 167 F. Supp. 2d 573, 579 (S.D.N.Y. 2001) (noting the S.D.N.Y. is "one of the busiest courts in the nation" and "retention of a case such as this, with only minimal connections to New York, would not serve the interest of justice, and would only 'delay adjudication of other cases brought by parties who are compelled to sue [here]'") (citations omitted). JLT is *not* compelled to sue in New York, and this dispute's connection to New York is, at best, minimal.

those same contractual relationships by inducing those employees to breach their Non-Solicitation and Confidentiality Agreements. *See* ECF # 1 at ¶ 127. Of course, a prerequisite for JLT's tortious interference claims is that those "agreements" are valid contracts. *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1148 (2004) ("To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party…."). Under California law (unlike New York law), however, unless an exception is met, contracts restricting anyone from "engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Thus, allowing both actions to proceed separately runs the risk of inconsistent findings regarding the validity of the relevant contracts.[15]  As a result, this factor favors transfer.

### 4. The Location and Accessibility of Documents Favors Transfer

Transfer also is favored where, as here: (i) documents are located in the transferee forum, *see In re Stillwater Min. Co. Sec. Litig.*, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003); *see also In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998); and (ii) discovery has already commenced and documents have been produced in the transferee forum. *Comprehensive Care Corp.*, 1991 WL 150220, at *5.

The vast majority of relevant documents likely are located in California, and many have already been produced to JLT in connection with the CA-Action. *See* Moo Decl. at ¶¶ 5, 6. And while it arguably may not be overly burdensome for NFP to access such documents, "'common sense suggests that retaining this case in New York *imposes some incrementally greater burden*, however, slight, on [the defendant] to copy or transport documents that they would not incur if

---

[15] *Cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("[a]s between federal district courts…the general principle is to avoid duplicative litigation").

the case proceeded in [the proposed transferee forum].'" *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006) (quoting *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004) (emphasis added)). As a result, this factor favors transfer.

### 5. The Ability to Compel Unwilling Witnesses Favors Transfer

Where "virtually all of the relevant witnesses" are located in the proposed transferee district, and "beyond the subpoena powers of [the transferor court] but not of [the proposed transferee court]," transfer of the action is favored. *C.I.S. of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Arkansas Ltd. P'ship.*, 175 B.R. 834, 837 (S.D.N.Y. 1994); *see also Arrow Elecs., Inc. v. Ducommun Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989) (recognizing that where "crucial" non-party witnesses were out of the reach of the transferor court's subpoena power, but were within the reach of another federal court, this factor weighs "heavily in favor of transfer").

Here, based on the Complaint's allegations, the CA-Employee-Defendants are likely to be the most critical witnesses. *See supra* at Point I.B.1. Three of the CA-Employee-Defendants currently reside in California, and one, who resided in San Francisco at the time the NY-Action was filed, recently left California, but still frequently returns.[16] Further, all of the CA-Employees (including the CA-Employee-Defendants) have stated that testifying at trial in New York would result in substantial expenses, and each of the CA-Employees are subject to the subpoena power of N.D.Cal as they have either: (i) admitted the minimal, and certainly materially less, expense that would be incurred if commanded to attend trial in the N.D.Cal versus New York, and/or (ii) live within 100 miles of the N.D.Cal.[17] Similarly, NFP resides in San Francisco and is subject to

---

[16] *See* Pestana Decl. at ¶ 1; Morcos Decl. at ¶ 1; Smith Decl. at ¶ 1; Sherman Decl. at ¶¶ 2, 6.

[17] Pestana Decl. at ¶¶ 6, 7; Morcos Decl. at ¶¶ 5, 6; Smith Decl. at ¶¶ 5, 6; Sherman Decl. at ¶¶ 6–8; Edwards Decl. at ¶¶ 6, 7; H. Martinez Decl. at ¶¶ 6, 7; McCarrick Decl. at ¶¶ 6, 7; Olloqui Decl. at ¶¶ 7, 8; Lopez Decl. at ¶¶ 6, 7; Medeiros Decl. at ¶¶ 6, 7. Plaintiff's protest that "NFP has not indicated that [the CA-Employees] will be unwilling to testify in this action," is a red

the N.D.Cal.'s subpoena power. That three New York employees are not within the subpoena power of the N.D.Cal. is of no moment given the nearly nonexistent allegations in the Complaint relating to them. Because the CA-Employees are clearly within the subpoena power of the N.D.Cal., and likely beyond the subpoena power of this Court, this factor favors transfer.[18]

### 6. <u>N.D.Cal.'s Familiarity with the Governing Law Favors Transfer</u>

While a forum's familiarity with the governing law is entitled to less weight than other factors, this factor also favors transfer given the N.D.Cal.'s greater familiarity with California law. *See Study Logic, LLC v. Farmer Bros. Co.*, 2019 WL 3412114, at *5 (E.D.N.Y. July 29, 2019) (holding Texas Uniform Trade Secrets Act claim better heard in Texas as "a federal court in Texas would have more familiarity with the local law."); *see also Opera Sols., LLC v. Schwan's Home Serv., Inc.*, 2015 WL 1378968, at *3 (S.D.N.Y. Mar. 25, 2015) ("It is well-established that courts in a home forum are better suited to construe that forum's state law than courts in other fora.").[19]

### 7. Plaintiff's Choice of Forum is Entitled to Little Weight, Thus Favoring Transfer

Further, "deference accorded to [a] plaintiff's choice of forum … is diminished substantially where the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995). Indeed, a "plaintiff's choice of forum is not entitled to

---

herring. ECF # 15 at p. 2. The issue is whether the witnesses are within the subpoena power of the N.D.Cal. and beyond the subpoena power of this Court. Thus, it is irrelevant whether a witness might be willing to testify in New York.

[18] The Court's "subpoena may command a person to attend a trial, hearing, or deposition only as follows: (A) within 100 miles of where the person resides, is employed, or regularly transactions business in person; or (B) within the state where the person resides, is employed or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

great weight when the operative facts have 'little or no connection with the transferor forum.'" *Neil Bros.*, 425 F. Supp. 2d at 333. Further, where a plaintiff's choice of forum was "motivated by tactical advantage," deference to such forum choice is diminished. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001).

Here, JLT is a Delaware corporation with a principal place of business in Chicago. ECF # 1 at ¶ 16. JLT simultaneously commenced actions in New York and California to gain a tactical advantage over NFP and the CA-Action Defendants. Moreover, the Complaint does not, because it cannot, allege that the relevant events or transactions underlying the NY-Action occurred in New York. To the contrary, the vast majority of the conduct at issue could have taken place, if at all, only in California. *See supra at* pp. 2–8. As a result, little or no deference is owed to JLT's choice of forum. Thus, this factor also favors transfer.[20]

### 8.    The Relative Means of the Parties is Neutral

Both JLT and NFP are corporations with similar means at their disposal. Thus, this factor is neutral. *Cf. Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (noting factor not entitled to great weight where plaintiff and defendant are corporations).

\*\*\*

Because JLT could have brought this action in the N.D.Cal., and because the relevant factors weigh in favor of transfer, the Court should transfer this case to the N.D.Cal.

---

[19] Plaintiff's contention that New York law applies to its claims is wrong. *See infra* at Point II.A.

[20] While this Court has held that "significant weight must be accorded to plaintiff's choice of forum," *Sills*, 2009 WL 1490852, at \*11, this Court has also made clear that such "choice carries little weight if it is neither the plaintiff's home forum nor where the operative events occurred." *Sheree Cosmetics, LLC v. Kylie Cosmetics, LLC.*, 2019 WL 3252752, at \*3 (S.D.N.Y. July 19, 2019); *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) ("The plaintiff's choice of forum is generally entitled to deference, unless [it] is not the plaintiff's home forum.").

## II. **IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED**

Alternatively, JLT's claims should be dismissed. To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). The Court must accept as true "well-pled" allegations contained in the Complaint, but should not credit "conclusory allegations or legal conclusions masquerading as factual conclusions." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (alterations omitted).[21]

### A. **California Law Applies to Plaintiff's Claims**

Contrary to Plaintiff's contention, California law is applicable to its claims. "In tort actions, New York Courts apply an 'interest analysis,' under which the law of the jurisdiction having the greatest interest in the litigation is applied." *Nostrum Pharm., LLC v. Manesh Dixit, Ph.D.*, 2015 WL 2208167, at *6 (S.D.N.Y. May 8, 2015) (*citing AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992)). Furthermore, "[a]s part of the interest analysis, the New York Court of Appeals has distinguished between rules regulating conduct and rules governing loss allocation. Generally, when the laws in conflict are conduct regulating, the law of the locus jurisdiction applies." *Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704, 719–20 (S.D.N.Y. 2002). Similarly, in trade secret cases, "the Second Circuit and its district courts have often used the locus of the misappropriation to determine the locus of the tort and the state with the greatest interest." *Nostrum Pharm.*, 2015 WL 2208167, at *6. And for unfair competition claims, the law

---

[21]"On a motion to dismiss, a court may consider documents incorporated by reference into or relied on in the Complaint." *Stechler v. Sidley, Austin Brown & Wood, L.L.P.*, 382 F. Supp. 2d 580, 585 n.25 (S.D.N.Y. 2005). The Court may also "consider matters of which judicial notice may be taken," including "documents filed in other courts…to establish the fact of such litigation and related filings." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (citations omitted; alteration in original).

of the state where the acts complained of took place is applied. *See Torah Soft Ltd.*, 224 F. Supp. 2d at 720. In addition, as claims for tortious interference are conduct regulating, the locus of the tort determines which jurisdiction's law should apply. *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002).

Here, Plaintiff's purported causes of action are: (i) tortious interference with existing and prospective business relations; (ii) tortious interference with contract; (iii) unfair competition; and (iii) misappropriation of confidential information. ECF # 1 at ¶¶ 116–145. The Complaint provides ample facts demonstrating that Plaintiff's claims arose from actions that primarily took place, if at all, only in California. *See supra* at pp. 6–8.[22] Moreover, California has the greatest interest in the outcome of this case given that the conduct of California residents, and their ability to freely move to competing companies, is at stake. *See supra* at Point I.B.3. In short, JLT should not be able to thwart California's public policy by using New York law to attack NFP's hiring practices in its California offices.

## B. JLT's Claims for Tortious Interference and Unfair Competition are Preempted by CUTSA (Claims I-III)

CUTSA preempts common law claims, including claims for tortious interference and unfair competition, based on the same nucleus of facts as a misappropriation of trade secrets claim. *See Robert Half Int'l, Inc. v. Ainsworth*, 68 F. Supp. 3d 1178, 1192 (S.D. Cal. 2014); *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 962 (2009). Here, JLT's claims for tortious interference and unfair competition arise out of the same purported facts underlying its misappropriation of confidential information claim, and also JLT's

---

[22] For example, JLT's claim for misappropriation of confidential information clearly arose in California, as there is no allegation that such information was misappropriated in New York. *See Fedders Corp. v. Haier Amer. Trading, LLC*, 2002 WL 519733 (S.D.N.Y. Apr. 4, 2002) (applying Illinois law based on location where misappropriated materials were obtained). Indeed, the Complaint fails to allege any misconduct by NFP in New York.

CUTSA claim asserted in the CA-Action. *See* ECF # 1 at ¶¶ 116–145; Field Decl., Ex. 2 at ¶¶ 139–148; *see also supra* at pp. 7–8. With respect to its tortious interference claims, JLT contends that NFP "encouraged [the 13 Employees] to utilize JLT's confidential information to solicit JLT's clients," and that NFP induced the 13 Employees to misappropriate, use and/or disclose such information. ECF # 1 at ¶¶ 118, 127. Further, with regard to JLT's misappropriation of confidential information claim, JLT alleges that the 13 Employees "used or disclosed, or threaten[s] to use or disclose, JLT's confidential information" and that "NFP induced, procured, and/or assisted [the 13 Employees] in the misuse, misappropriation and disclosure of [such information]." *Id.* at ¶¶ 141, 142. And JLT's CUTSA claim, asserted in the CA-Action, asserts nearly identical claims that "Defendants improperly acquired trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means," and that "Defendants are using and disclosing or threatening to use or disclose [such] trade secrets..." Field Decl., Ex. 2 at ¶ 143. JLT's overlapping claims for tortious interference and unfair competition are clearly preempted by CUTSA.

### C. The Complaint Fails to State a Claim for Tortious Interference with Existing and Prospective Business Relationships (Claim I)

Even were it not preempted by CUTSA (and it is), to survive a motion to dismiss, JLT's claim for tortious interference with existing or prospective business relationships must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; and (3) intentional acts on the part of the defendant designed to disrupt the relationship." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003). Further, the defendant's interference must in fact be "wrongful," "unlawful," or "illegitimate," and must be "beyond those of a mere competitor securing business for himself." *Della Penna v. Toyota Motor Sales,*

*U.S.A., Inc.*, 11 Cal. 4th 376, 390 (1995) (collecting cases); *A.F. Arnold & Co. v. Pacific Prof'l Ins., Inc.*, 27 Cal. App. 3d 710, 716 (1972) (same). Here, JLT proffers only conclusory assertions that NFP's conduct was wrongful, and fails to adequately allege facts that, if true, would demonstrate that NFP acted outside the scope of a competitor legally seeking business for itself (*see* ECF # 1 at ¶¶ 118, 120, 122). Such bald assertions are insufficient to state a claim for tortious interference with existing and prospective business relationships.[23]

### D. The Complaint Fails to State a Claim for Tortious Interference with Contract (Claim II)

Similarly, even if it were not preempted by CUTSA (and it is), JLT's tortious interference with contract claim requires well-pled allegations of: (a) the "existence of a valid contract between the plaintiff and a third party"; (b) "defendant's knowledge of that contract"; (c) "defendant's intentional acts designed to induce a breach or disruption of the contractual relationship"; (d) "actual breach or disruption of the contractual relationship"; and (e) "resulting damages." *Reeves*, 33 Cal. 4th at 1148. Here, JLT merely claims that NFP interfered with purported "Non-Solicitation and Confidentiality Agreements." *See* ECF # 1 at 127.

First, the provisions of the alleged agreements are facially overbroad. Specifically, the

---

[23] Under New York law, claims for tortious interference with existing and prospective business relationships require a showing of: "(a) business relations with a third party; (b) the defendant's interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship." *Advanced Glob. Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 779 (N.Y. Sup. Ct.), *aff'd as modified*, 44 A.D.3d 317 (1st Dep't 2007). A plaintiff must show that the defendant acted either solely to harm plaintiff, or "that such conduct was wrongful or improper independent of the interference allegedly caused thereby." *Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312, 313 (1st Dep't 2004). "'Wrongful means' include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (1990) (citations omitted). JLT offers no facts showing that NFP's conduct was wrongful beyond the alleged interference itself, and fails to plead that NFP acted outside the scope of a lawful competitor. *See infra* at Point II.E. As a result, its claims would fail even under New York law.

Complaint alleges that some of the 13 Employees agreed not to "directly or indirectly solicit, 'divert, take away or do business with [JLT's] [c]lients or [p]rospective clients,' with whom [they] had 'any direct or indirect involvement' during the twelve months prior to [their] termination of employment." *See* ECF # 1 at ¶ 27. Such restrictions are an invalid restraint of trade under California law. *See Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 948 (2008). Second, even if the purported agreements are valid contracts, JLT offers no factual allegations supporting a claim that NFP induced a breach or even had actual knowledge of such "contracts" other than insufficient and conclusory "knew or should have known" assertions. *See CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (holding that a claim of intentional interference with contract requires a showing of knowledge, as opposed to constructive knowledge, of a contract). Moreover, JLT has failed to allege that NFP's knew that interference was certain or substantially certain to occur. *See Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 56, (1998) (holding such claim requires that actor "knows that the interference is certain or substantially certain to occur as a result of his action"). JLT's claim for tortious interference with contract should be dismissed.[24]

## E.  The Complaint Fails to State a Claim for Unfair Competition (Claim III)

To sustain a claim for unfair competition a plaintiff must establish that: (1) plaintiff invested substantial time, skill or money in developing its property; (2) defendant appropriated and used such property at little or no cost; (3) defendant's appropriation and use was without plaintiff's consent; and (4) plaintiff has been injured by defendant's conduct. *City Solutions, Inc.*

---

[24] The result under New York law is the same as JLT must allege "that a valid contract existed which [NFP] knew about, [that NFP] intentionally and improperly procured the breach of the contract and the breach resulted in damage to" JLT. *Ullmannglass v. Oneida, Ltd.*, 86 A.D.3d 827, 829 (3d Dep't 2011). The agreements here are not valid contracts, and the Complaint is devoid of factual allegations that NFP's conduct was "improper" or that it knew about the agreements or procured a breach resulting in damage to JLT.

*v. Clear Channel Commc'ns*, 365 F.3d 835, 842 (9th Cir. 2004). Unfair competition is also prohibited by California Business and Professions Code section 17200, which requires a plaintiff to state, with reasonable particularity, facts supporting the statutory elements of the violation. *Khoury v. Maly's of Calif., Inc.*, 14 Cal. App. 4th 612, 619 (Dist. Ct. 1993). A plaintiff must also identify the statutes, regulations or other law to which any "unfair" claim may be tethered. *See Gregory v. Alberson's, Inc.*, 104 Cal. App. 4th 845, 854 (Dist. Ct. 2002).

Here, JLT merely offers the conclusory allegation that NFP is driven by "unlawful predatory motives and malice" or "acted in knowing or reckless disregard of the rights and interests possessed by JLT…" ECF # 1 at ¶ 134. JLT offers no basis for such allegations. Moreover, JLT fails to identify any statute, regulation, or law, to which JLT's claim may be tethered.[25] Thus, JLT's claim for unfair competition should be dismissed.

### F. The Complaint Fails to State a Claim for Misappropriation of Confidential Information (Claim IV)

California law is clear that CUTSA preempts common law claims of misappropriation. *Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d 1127, 1158 (E.D. Cal. 2017), ("CUTSA fully 'occupies the field' and preempts all claims of common law misappropriation") (citations omitted). Given this clear pronouncement of California law, there can be no doubt that JLT's claim for misappropriation of confidential information is preempted by CUTSA and, therefore,

---

[25] JLT's claim also fails under New York law as it requires more than a mere showing of "commercial unfairness." *See Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 671 (1981). New York law recognizes two theories of common-law unfair competition: "palming off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007). "An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Id.* at 478. "[A] plaintiff must demonstrate that it had compiled information used in its business that provided an opportunity to obtain a competitive advantage and that a competitor misappropriated it." *Miller v. Walters*, 46 Misc. 3d 417, 426 (N.Y. Sup. 2014). Here, JLT offers no such factual allegations.

should be dismissed. [26]

## CONCLUSION

For the reasons set forth above, Defendant NFP respectfully requests that the Court

transfer this action to the N.D.Cal. or, in the alternative, dismiss the Complaint, with prejudice.

Dated: New York, New York
      October 25, 2019

Respectfully submitted,

HERRICK, FEINSTEIN LLP

By:    /s/ *Sean E. O'Donnell*
      Sean E. O'Donnell
      Jason A. D'Angelo
      Patrick Johnson
      Daniel Field
      2 Park Avenue
      New York, NY 10016
      Telephone: (212) 592-1400
      Facsimile:  (212) 592-1500
      sodonnell@herrick.com
      jdangelo@herrick.com
      pjohnson@herrick.com
      dfield@herrick.com

*Attorneys for Defendant NFP*

---

[26] JLT's claim would fail under New York law as well. To "establish a cause of action based on misappropriation of confidential information," a plaintiff "must show that the defendant solicited the plaintiff's customers where the customer list was a trade secret, or where the defendant engaged in wrongful conduct, 'such as physically taking or copying files or using confidential information.'" *Babeo v. Majeed*, 150 A.D.3d 942, 944 (2d Dep't 2019). Further, New York law requires a showing that defendant used the confidential information "for the purpose of securing a competitive advantage." *Reed Constr. Data Inc. v. McGraw-Hill Cos.*, 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010).  Here, JLT failed to plead an actual trade secret. In addition, the Complaint alleges no wrongful conduct on the part of NFP. JLT again provides nothing more than the insufficient, conclusory assertions that its former employees have "used or disclosed, or threaten[] to use or disclose, JLT's confidential information," that "NFP induced, procured and/or assisted … in the misuse, misappropriation and disclosure of [such information]," and that such employees "on behalf of NFP, are presently misappropriating [such information], and [are] using such information to the detriment of JLT."  ECF # 1 at ¶¶ 141, 142, 143.