UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JLT SPECIALTY INSURANCE SERVICES INC.,

                              Plaintiff,

              -against-

NFP PROPERTY & CASUALTY SERVICES,
INC.,

                              Defendant.

Case No.: 19-cv-03921 (KMK)


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER OR, IN THE ALTERNATIVE,
TO DISMISS THE COMPLAINT**


LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022-4834
(212) 583-9600

*Attorneys for Plaintiff*

On the brief:
  A. Michael Weber
  Shawn Matthew Clark
  Daniella Adler

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT..................................................................................... 1

STATEMENT OF FACTS............................................................................................. 2

I.      THE PARTIES ................................................................................................... 2

II.     NFP'S RECRUITMENT OF JLT'S EMPLOYEES FROM ITS NEW YORK CORPORATE
        OFFICE ............................................................................................................ 2

III.    NFP'S CORPORATE RAIDING AND UNAUTHORIZED TAKING OF JLT'S
        CONFIDENTIAL INFORMATION.......................................................................... 4

IV.     THIS ACTION ................................................................................................... 5

ARGUMENT ............................................................................................................... 5

I.      THIS ACTION IS PROPERLY VENUED IN THIS COURT AND SHOULD REMAIN HERE.............. 5

        A.      The Convenience of Witnesses ................................................................. 6

        B.      The Location of Relevant Documents and the Relative Ease of Access to
                Sources of Proof.................................................................................... 8

        C.      The Convenience of the Parties ............................................................... 9

        D.      The Locus of the Operative Facts .......................................................... 9

        E.      The Availability of Process to Compel Attendance of Unwilling Witnesses........ 9

        F.      The Relative Means of the Parties ........................................................ 10

        G.      The Forum's Familiarity with the Governing Law............................... 10

        H.      The Weight Accorded to JTL's Choice of Forum ............................... 11

        I.      Trial Efficiency and the Interests of Justice Based on the Totality of the
                Circumstances ..................................................................................... 12

II.     NEW YORK LAW APPLIES TO JLT'S CLAIMS ................................................. 13

        A.      There Is No Conflict Between New York and California Law ......................... 13

        B.      Even if There Were A Conflict of Laws, New York Has the Greater
                Interest in the Litigation, So New York Law Applies .......................... 14

        C.      Even if New York Did Not Apply, California Law Does Not Apply to
                JLT's Claims..................................................................................... 16

        D.      In the Alternative, A Decision on Choice of Law Is Premature at This
                Stage of the Litigation......................................................................... 17

III.    THE COMPLAINT SHOULD NOT BE DISMISSED................................................. 17

        A.      Each of JLT's Claims Are Adequately Pleaded ................................... 17

                1.      JLT States a Claim for Tortious Interference with Existing and
                        Prospective Business Relationships....................................... 17

TABLE OF CONTENTS
(CONTINUED)

PAGE

2.     JLT States a Claim for Tortious Interference with Contracts ................. 18

3.     JLT States an Unfair Competition Claim .................................................. 20

4.     JLT States a Claim for Misappropriation of Confidential Information ...................................................................................................... 22

B.    If California Applied to JTL's Claims, CUTSA Would Not Preempt JLT's Common Law Claims .......................................................................................... 22

C.    Should the Court Grant Any Part of Defendant's Motion to Dismiss, the Court Should Grant JLT Leave to Amend Its Complaint ................................... 25

CONCLUSION ........................................................................................................................... 25

ii.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AirDefense, Inc. v. AirTight Networks, Inc.*,
    2006 WL 2092053 (N.D. Cal. July 26, 2006)..........................................................................25

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*,
    457 F. Supp. 2d 474 (S.D.N.Y. 2006)..............................................................................8, 10

*Am. Para Prof'l Sys., Inc. v. LabOne, Inc.*,
    175 F. Supp. 2d 450 (E.D.N.Y. 2001) ...................................................................................18

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007)...................................................................................12

*Angelica Textile Servs., Inc. v. Park*,
    220 Cal. App. 4th 495 (2013) ........................................................................................23, 24

*Arabi v. Javaherian*,
    No. 13-CV-00456-ERK-CLP, 2014 WL 3892098 (E.D.N.Y. May 1, 2014) ...........................8

*Astor Holdings, Inc. v. Roski*,
    No. 01 CIV. 1905 (GEL), 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) .......................6, 8, 9, 11

*Atl. Recording Corp. v. BCD Music Grp., Inc.*,
    No. 08 CIV. 5201 (WHP), 2009 WL 1390848 (S.D.N.Y. May 7, 2009) ...................6, 7, 8, 10

*Ayco Co., L.P. v. Frisch*,
    795 F. Supp. 2d 193 (N.D.N.Y. 2011) ......................................................................... 13-14, 15

*Bigio v. Coca-Cola Co.*,
    675 F.3d 163 (2d Cir. 2012)...................................................................................................13

*Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.*,
    655 F. App'x 9 (2d Cir. 2016) ...............................................................................................17

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    2017 WL 1436044 (N.D. Cal. 2017) .....................................................................................16

*ChormaDex, Inc. v. Elysium Health, Inc.*,
    369 F. Supp. 3d 983 (C.D. Cal. 2019) ............................................................................18, 25

*Corinthian Media, Inc. v. Yelsey*,
    No. 92-CIV-0109 (LJF), 1992 WL 47546 (S.D.N.Y. Mar. 5, 1992).................................6, 9

*CRST Van Expedited, Inc. v. Werner Enters.*,
    479 F.3d 1099 (9th Cir. 2007) ............................................................21

*Digital Envoy, Inc. v. Google, Inc.*,
    370 F. Supp. 2d 1025 (N.D. Cal. 2005) ..............................................23

*Document Techs., Inc. v. West*,
    No. 17-CV-2405 (JSR), 2017 WL 1743938 (S.D.N.Y. Apr. 24, 2017) ................................12

*Erhart v. BofI Holding, Inc.*,
    No. 15-CV-02287-BAS-NLS, 2017 WL 588390 (S.D. Cal. Feb. 14, 2017) ....................14, 19

*Estee Lauder Companies Inc. v. Batra*,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006) .............................................14, 15

*Geo Grp., Inc. v. Cmty. First Servs., Inc.*,
    No. 11-CV-1711 CBA, 2012 WL 1077846 (E.D.N.Y. Mar. 30, 2012)..................................22

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*,
    241 F. Supp. 2d 246 (S.D.N.Y. 2002) ...................................................19

*Holborn Corp. v. Sawgrass Mut. Ins. Co.*,
    304 F. Supp. 3d 392 (S.D.N.Y. 2018) ..................................................13

*Innoviant Pharmacy, Inc. v. Morganstern*,
    390 F. Supp. 2d 179, 187 (N.D.N.Y. 2005) ........................................13

*Ivy Mar Co. v. C.R. Seasons Ltd.*,
    No. 95-CV-0508 (FB), 1998 WL 704112 (E.D.N.Y. Oct. 7, 1998) .................20, 21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*,
    171 Cal. App. 4th 939 (Cal Ct. App. 2009) ........................................23

*Khmaladze v. Vorotyntsev*,
    No. 1:16-CV-8029-GHW, 2019 WL 1746006 (S.D.N.Y. Apr. 18, 2019) .............................18

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal.4th 1134 (2003) ....................................................................21

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    672 F.3d 155 (2d Cir. 2012); ........................................................13, 15

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    739 F.3d 45 (2d Cir. 2013)..................................................................13

*Marsh USA Inc. v. Karasaki*,
    No. 08 CIV. 4195 (JGK), 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008) .........................11, 19

*Marsh USA Inc. v. Schuhriemen*,
   183 F. Supp. 3d 529 (S.D.N.Y. 2016)............................................................11, 19

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007)...............................................................................25

*Medtech Prod. Inc. v. Ranir, LLC*,
   596 F. Supp. 2d 778 (S.D.N.Y. 2008)..................................................................11

*Mercer Health & Benefits LLC v. DiGregorio*,
   307 F. Supp. 3d 326 (S.D.N.Y. 2018)............................................................11, 19

*Meserole v. Sony Corp. of Am., Inc.*
   No. 08 CV. 8987, 2009 WL 1403933 (S.D.N.Y. May 19, 2009) ..........................17

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   998 F. Supp. 2d 157 (S.D.N.Y. 2014)..................................................................17

*Nahabedian v. Intercloud Sys., Inc.*,
   No. 15-CV-00669(RA), 2016 WL 155084 (S.D.N.Y. Jan. 12, 2016) ....................20

*In re Nematron Corp. Sec. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998)...............................................................11, 12

*O'Connor v. Uber Tech., Inc.*,
   58 F. Supp. 3d 989 (N.D. Cal. 2014) ..................................................................16

*Ontel Prod., Inc. v. Project Strategies Corp.*,
   899 F. Supp. 1144 (S.D.N.Y. 1995)....................................................................11

*Pac. Gas & Elec. v. Bear Stearns & Co.*,
   50 Cal.3d 1118, 1126 (1990) .............................................................................20

*PLC Trenching Co., LLC v. Newton*,
   No. 6:11-CV-0515, 2011 WL 13135653 (N.D.N.Y. Dec. 12, 2011) .....................21

*Prod. Res. Grp., L.L.C. v. Oberman*,
   No. 03 CIV. 5366 (JGK), 2003 WL 22350939 (S.D.N.Y. Aug. 27, 2003) .............11

*Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.*,
   745 F. Supp. 2d 343 (S.D.N.Y. 2010)..................................................................22

*Sills v. Ronald Reagan Presidential Found., Inc.*,
   No. 09 CIV. 1188 (GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009) ...........5, 10

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (Cal. Ct. App. 2010) ........................................................23

*SMC Networks Inc. v. Hitron Tech. Inc.*,
    No. SACV 12-1293-JLS (RNBx), 2013 WL 12114105 (C.D. Cal. 2013) ..................14, 18, 24

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    726 F. Supp. 2d 291 (S.D.N.Y. 2010) .......................................................................................19

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
    324 F. Supp. 3d 421 (S.D.N.Y. 2018) ........................................................................................6

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013) ......................................................................................................15

*Wandering Dago Inc. v. N.Y.S. Office of Gen. Servs.*,
    992 F. Supp. 2d 102 (N.D.N.Y. 2014) ................................................................................19, 20

*Youngevity Int'l Corp. v. Smith*,
    224 F. Supp. 3d 1022 (S.D. Cal. 2016) ...............................................................................14, 19

*Youst v. Longo*,
    4 Cal.3d 64 (Cal. Sup. Ct.1987) ...............................................................................................18

*Zayo Group LLC v. Hisa*,
    No. SACV 13–752–JST (JPRx), 2013 WL 12201401 (C.D. Cal. 2013)....................18, 24, 25

**Statutes**

18 U.S.C. § 1838 ...........................................................................................................................16

Cal. Bus. & Prof. Code § 16600 ...........................................................................................14, 19

Cal. Bus. & Prof. Code § 17200 .................................................................................................21

California Uniform Trade Secrets Act (Cal. Civ. Code § 3426.7) ...............................................23

## PRELIMINARY STATEMENT

Plaintiff JLT Specialty Insurance Services Inc. ("JLT"), a subsidiary Marsh & McLennan Companies Inc., a New York corporation, alleges that Defendant NFP Property and Casualty Services, Inc. ("NFP"), a New York corporation headquartered in White Plains, New York, engaged in tortious conduct and unfair competition, which resulted in economic injury in New York, among other places. NFP's tortious conduct includes recruiting thirteen JLT employees from its corporate offices in New York, including three New York-based employees of JLT, and inducing them to breach their non-solicitation and confidentiality agreements with JLT. As a result of NFP's tortious interference and unfair competition, JLT lost several clients, including a residential and commercial properly developer engaged in a venture to develop real estate in Brooklyn, and a condominium in the Bronx. Thus, given this action's connections to New York, deference to JLT's choice of forum in New York is warranted.

In arguing that this case should be transferred to the Northern District of California, NFP incorrectly lumps this action together with a separate and independent action pending in California involving the individual contractual breaches of four former California-based employees of JLT. NFP is not a defendant in that California action, and, contrary to NFP's characterization, JLT's claims against NFP in this action are not solely grounded in events that occurred in California. Instead, the acts and omissions at the center of JLT's claims against NFP (as opposed to the claims against the employees themselves) took place here in New York, where NFP interviewed, hired and encouraged JLT's former employees to breach their contractual and fiduciary obligations to JLT, and unfairly derived a profit from those employees' breaches.

NFP's motion focuses on the tortious conduct of JLT's former employees, but ignores the tortious conduct of NFP's New York-based employees who will be witnesses in this action, who possess relevant documents, and for whom venue is this Court is convenient. Thus, as summarized

1

below, this action should remain in this Court, because, on balance, the factors for evaluating transfer to another venue do not weigh decisively in favor of transfer to California, and NFP has failed to meet its burden to demonstrate a clear-cut showing that a transfer is in the best interests of the litigation.

NFP's alternative argument seeking dismissal of JLT's complaint also fails. As an initial matter, New York law applies to this action because not only is NFP based in New York, but the conduct at issue occurred here in New York. In any event, regardless of whether California or New York law applies, as explained further below, JLT has stated plausible claims for relief against NFP for its tortious conduct.

## STATEMENT OF FACTS

### I.    The Parties

JLT is a leading provider of insurance, reinsurance, employee benefits advice and brokerage services (Compl. ¶ 16). It is incorporated in Delaware, but maintains offices in New York and California, among numerous other locations (*Id.*; *see also* https://www.jlt.com/en-us/our-locations (last visited Nov. 22, 2019)). JLT is a subsidiary of Marsh & McLennan Companies Inc., which maintains a principal executive office in New York, New York (ECF No. 2; http://www.mmc.com/contact.html (last visited Nov. 22, 2019)).

NFP is a New York corporation with its principal place of business located at 707 Westchester Avenue, White Plains, NY 10604 (Compl. ¶ 17). Like JLT, NFP provides insurance, reinsurance, employee benefits advice and brokerage services (*Id.*).

### II.    NFP's Recruitment of JLT's Employees From Its New York Corporate Office

In or about early November 2018, members of NFP's executive leadership team met with Gary Pestana, an executive vice president and practice leader for JLT's Real Estate Practice, in New York, to discuss confidentially NFP's plan to hire Pestana. (Compl. ¶ 21; Weber Decl., Ex.

2

A[1]; https://www.nfp.com/about-us/leadership (last visited Nov. 14, 2019)). Following his meeting with NFP's New York-based executive leadership, Pestana emailed the individuals he met with at NFP to let them know that he would be "back in [New York] on December 13th & 14th" to meet with them again (Weber Decl., Ex. A). They met in NFP's offices in Midtown Manhattan on the morning of December 13, 2018 (Weber Decl., Ex B).

Over the course of the next three months, Pestana corresponded with NFP's New York-based executives, including Henry Lombardi, NFP's Executive Vice President, Evan Michael, NFP's Executive Vice President and General Counsel, and Ginnette Quesada-Kunkel, NFP's Executive Vice President and Chief Human Resources Officer, concerning the terms of his offer from and employment with NFP (Weber Decl., Ex. C, D and E). Pestana also corresponded with NFP's New York-based Talent Acquisition Coordinator, Paige Jankowski, concerning his on-boarding process (Weber Decl., Ex. F).

Among the documents Pestana exchanged with NFP's New York-based executives was a signed "Disclosure to Prospective Candidates," dated January 29, 2019, in which Pestana promised to inform NFP if he had a confidentiality, non-compete, non-solicitation or other restrictive agreement, and to provide NFP with copies of any such restrictive covenant agreement (Weber Decl., Ex. D). Thus, NFP knew or should have known of the post-employment obligations Pestana owed to JLT prior to his commencement of employment with NFP. (*Id.*; Compl. ¶ 103).

At the same time they were soliciting Pestana, NFP's New York Executives were also soliciting Pestana's JLT colleagues, Sara Sherman, Dustin Smith and Ramy Morcos. (Weber Decl., Exs. G, H, I). Like Pestana, Sherman, Smith and Morcos each signed a "Disclosure to Prospective Candidates," addressing their restrictive covenant agreements with JLT (*Id.*). Smith signed his

---

[1] Citations to the "Weber Decl." refer to the Declaration of A. Michael Weber dated November 22, 2019, which is submitted with this memorandum of law.

paperwork in person, in New York, and received instructions from Dan Salmon, a New York-based Senior Vice President for NFP, on how to draft broker of record letters for the clients he was bringing to NFP from JLT, potentially in violation of his non-solicitation agreement with JLT (Weber Decl., Ex. H). Morcos' offer letter from NFP's New York-based Chief Human Resources Officer confirmed that he would be reporting to Henry Lombardi, NFP's New York-based Executive Vice President, "or an NFP designated manager" (Weber Decl., Ex. I).

## III.    NFP's Corporate Raiding and Unauthorized Taking of JLT's Confidential Information

Pestana, Sherman, Smith and Morcos each accepted employment with NFP in or about March 2019 (Weber Decl., Exs. A-I). Prior to resigning their employment with JLT, however, they accessed and downloaded JLT's confidential information for use in their new jobs with NFP (Compl. ¶¶ 57-70). They also met with JLT clients to solicit business in violation of their contractual obligations and fiduciary duties (Compl. ¶¶ 71-80). As a result of this tortious conduct, JLT lost several clients including a residential and commercial properly developer engaged in a venture to develop real estate in Brooklyn (Compl. ¶¶ 32, 71-80), and a condominium in the Bronx (Compl. ¶¶ 98-99). In addition to Pestana, Sherman, Smith and Morcos, nine other JLT employees (collectively the "Breaching Employees") resigned their employment with JLT and immediately commenced employment with NFP, including three New York-based employees (Compl. ¶¶ 52-56).

NFP knew or should have known that one or more the departing JLT employees were soliciting on NFP's behalf in violation of their non-solicitation and confidentiality agreements (Compl. ¶ 103). NFP also knew or should have known that one or more the Breaching Employees downloaded, used and/or disseminated JLT's confidential information on NFP's behalf in violation of their non-solicitation and confidentiality agreements (Compl. ¶ 104). Upon

information and belief, NFP has assisted in or benefited from the Breaching Employees' breaches of their non-solicitation and confidentiality agreements (Compl. ¶ 105).

## IV.    This Action

On May 1, 2019, JLT commenced this action in the district in which NFP maintains its corporate headquarters; the district from which NFP recruited JLT's employees; and the district in which NFP decided to ignore the Breaching Employee's tortious conduct and contribute to their conduct by facilitating the breach of their duties to JLT. JLT also selected this venue because it is the district in which it lost the most significant revenue as a result of NFP's and Pestana's tortious conduct (Compl. ¶ 32, 72-80).

## ARGUMENT

## I.    This Action is Properly Venued in this Court and Should Remain Here

JLT's claims in this action are based on conduct by and on behalf of NFP, a New York corporation, which occurred principally in New York. The relevant witnesses include, among others, the New York-based NFP employees who hired and supervised the Breaching Employees, and aided in their tortious conduct. The relevant documents relate, in part, to the hiring discussions that occurred here in New York. Thus, as summarized below, even though this action could have been brought in the Northern District of California, it properly belongs here in New York.

In determining whether venue transfer is appropriate, courts balance: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances. *Sills v. Ronald Reagan Presidential Found., Inc*., No. 09 CIV. 1188 (GEL), 2009 WL 1490852, at *10–

13 (S.D.N.Y. May 27, 2009); *Astor Holdings, Inc. v. Roski,* No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *11 (S.D.N.Y. Jan. 17, 2002). To prevail on a motion to transfer, the moving party must establish "by clear and convincing evidence that transfer is appropriate." *Atl. Recording Corp. v. BCD Music Grp., Inc.*, No. 08 CIV. 5201 (WHP), 2009 WL 1390848, at *4 (S.D.N.Y. May 7, 2009). Thus, transfer of a case is not appropriate merely because the defendant finds the chosen forum inconvenient or undesirable. *Corinthian Media, Inc. v. Yelsey*, No. 92-CIV-0109 (LJF), 1992 WL 47546, at *1 (S.D.N.Y. Mar. 5, 1992). "Indeed, as a general rule, a plaintiff's choice of forum is given great weight and should not be disturbed unless the [above] criteria weigh strongly in defendant's favor." *Id.*

Here, a balancing of these factors does not weigh decisively in favor of transfer to California. They are, at most, neutral. Therefore, the case should remain here in New York.

### A.     The Convenience of Witnesses

In evaluating whether the convenience of witnesses favors transfer, courts must "'look beyond the quantity of witnesses and assess the quality of the testimony to be offered,'" based on the movant's representation about who the key witnesses are and "what their testimony will cover." *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 437 (S.D.N.Y. 2018) (internal citation omitted). Generally, "[t]he convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer." *Atl. Recording Corp.*, 2009 WL 1390848, at *5 (internal citation omitted).

Here, NFP argues, without summarizing the expected testimony that "the most crucial witnesses" reside or resided in California, including ten of the thirteen Breaching Employees (Def. Mem. at 11-12). NFP's argument, however, ignores the numerous New York-based NFP employees who were responsible for recruiting and setting the terms of the Breaching Employees' employment with NFP, and whom JLT will seek to depose concerning their discussions with the

Breaching Employees, their knowledge of the Breaching Employee's non-solicitation and confidentiality agreements, and their knowledge of the Breaching Employee's impermissible solicitations. These witnesses include:

- Henry Lombardi, Executive Vice President, Property and Casualty;
- Evan Michael, Executive Vice President & General Counsel;
- Carl Nelson, Executive Vice President, Mergers & Acquisitions;
- Ginnette Quesada-Kunkel, Executive Vice President & Chief Human Resources Officer;
- Adam Favale, Senior Vice President, Merger & Acquisitions;
- Dan Salomon, Senior Vice President, M&A Integration Management; and
- Paige Jankowski, Talen Acquisition Coordinator

all of whom are based in NFP's corporate offices at 340 Madison Avenue, New York, New York, and all of whom played a role in recruiting and/or supervising the Breaching Employees (Weber Decl., Exs. A-I). These individuals' knowledge of the recruitment of and actions by the Breaching Employees is critical to JLT's claims that NFP knew or should have known about the Breaching Employees tortious conduct, which forms the basis for each of JLT's claims against NFP.

NFP's argument also ignores the fact that only four of the thirteen Breaching Employees actually reside in the Northern District of California (Edwards, Hermilia Martinez, McCarrick and Mederios) (*see* ECF Nos. 24, 27, 29 and 30). The remaining nine Breaching Employees, including the "CA-Employee-Defendants," who NFP deems "crucial," reside in the District of Massachusetts (Sherman), the Eastern District of New York (Forbes), the Southern District of New York (Margaret Martinez and Nelson), and the Central District of California (Lopez, Morcos, Olloqui, Pestana and Smith) (*see* ECF Nos. 25-26, 28, 32-37). Thus, the convenience of these nine Breaching Employees, including Pestana, Sherman, Smith and Morcos, is irrelevant to determining whether this action should be transferred to the Northern District of California.[2] *See Atl. Recording*

---

[2] NFP's representation that the Northern District of California is convenient for the "CA-Employee-Defendants" is disingenuous. Those individuals, who live in Los Angeles and Massachusetts, previously asked the Court in the California action that they be excused from attending a mandatory settlement conference in the Northern District of California because, according to them, it would be inconvenient to travel to San Francisco. Sherman represented that

*Corp.*, 2009 WL 1390848, at *5.

Finally, any inconvenience caused by traveling from the west coast to the east coast can be mitigated by an agreement or decision "that the parties and witnesses will be deposed in their principal place of business." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp*., 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (denying defendant's motion to transfer to the Central District of California). Thus, in light of the numerous New York-based witnesses and the minimal number of witnesses who actually reside in the Northern District of California, this factor weighs against transfer, or, at worst, is neutral.

**B.     The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof**

It is well settled that "[i]n an era of electronic documents, easy copying, and overnight shipping, the location of documents and other evidence assumes much less importance than it did formerly." *Atl. Recording Corp.*, 2009 WL 1390848, at *6; *see Arabi v. Javaherian,* No. 13-CV-00456-ERK-CLP, 2014 WL 3892098, at *10 (E.D.N.Y. May 1, 2014) (recognizing that "documents can be scanned and digitally transmitted anywhere"); *See Astor Holdings, Inc.,* 2002 WL 72936, at *12 ("the location of records is not a compelling consideration when records are easily portable"). Thus, the fact that some documents may be located in California is not a consideration that weighs in favor of transfer. Indeed, an equal or greater amount of documents likely exist here in New York where NFP's corporate human resources office is located, where the Breaching Employees were recruited, and where the hiring documents and agreements for the Breaching Employees were generated. This fact is neutral, or weighs against transfer.

---

it would be "particularly difficult" because she "resides in Massachusetts" (Weber Decl., Ex. J). Surely, New York is more convenient for Sherman than San Francisco.

### C.      The Convenience of the Parties

JLT and NFP maintain offices in both New York and California. Therefore, because "the parties to the suit are located both in California and in New York, the convenience of the parties factor does not weigh in either party's favor." *Astor Holdings, Inc.,* 2002 WL 72936, at *12.

### D.      The Locus of the Operative Facts

The operative facts in this action are bi-costal. NFP recruited and hired the Breaching Employees in New York (Weber Decl., Exs. A-I). Its New York-based executives learned of the Breaching Employees' post-employment obligations owed to JLT, and the Breaching Employees' supervisors, who are based in New York, either aided in the Breaching Employee's tortious conduct or intentionally failed to take action to stop it. The result of this unfair competition and tortious interference was the departure of several JLT clients, including two New York clients.

While it is likely that the Breaching Employees' improper download and taking of JLT's confidential information occurred in California, the tortious act central to this case is not the conduct of the Breaching Employees, who are not parties to this action, but the NFP's decision to facilitate the conduct, to ignore the Breaching Employees' obligations, and to, by omission, ratify that conduct. Those decisions occurred in New York. This action is not against the Breaching Employees, but relies on wholly independent causes of action.  This factor favors the cases's venue in New York, or, at worst, is neutral. *See Corinthian Media, Inc.*, 1992 WL 47546, at *2 ("Although Yelsey's affidavit makes clear that certain key events occurred in California, the balance of the relevant factors do not so favor defendants as to warrant disregarding plaintiff's choice of forum").

### E.      The Availability of Process to Compel Attendance of Unwilling Witnesses

The availability or unavailability of process to compel the attendance of unwilling witnesses also does not weigh decisively in favor of transfer to the Northern District of California.

As an initial matter, notwithstanding the protests of potential burden in the declarations proffered by NFP, not one of the fourteen declarants states that he or she would be unwilling to testify in New York. *See Sills,* 2009 WL 1490852, at *10–13 (observing that defendant "failed to indicate that any of its anticipated non-party witnesses would in fact be unwilling to testify, rendering this factor neutral"). Indeed, three of the potential witness proffered by NFP (Forbes, Martinez and Nelson) are subject to subpoena in New York (ECF Nos. 25, 28 and 33). And, Pestana and Smith service at least two New York-based clients, who they improperly diverted from JLT to NFP, and likely travel to New York from time to time for work.

Moreover, the New York-based individuals involved in the Breaching Employees' recruitment (Lombardi, Michael, Carl Nelson, Quesada-Kunkel, Favale, Salomon and Jankowski) are subjected to the subpoena power of this Court. These witnesses could not be compelled to testify in California, and, without them, JLT would not be able to solicit important testimony concerning the recruitment of the Breaching Employees, and NFP's knowledge of their non-solicitation agreements and tortious conduct. Thus, this factor weighs against transfer.

### F.      The Relative Means of the Parties

Where the party moving for transfer is a large corporation, this factor is given little weight. *See Atl. Recording Corp*., 2009 WL 1390848, at *7. It should be given even less weight here, where both parties are nationwide corporations with significant means. *See Am. Eagle Outfitters, Inc.,* 457 F. Supp. 2d at 478. Consequently, JLT agrees with NFP's contention this factor is neutral.

### G.      The Forum's Familiarity with the Governing Law

"The forum's familiarity with governing law is typically given little weight by federal courts" *Sills*, 2009 WL 1490852, at *10. "[T]his result is particularly appropriate where, as here, there do not appear to be any complex issues of state law involved." *Id.* Indeed, this Court has extensive experience with claims that are nearly identical to the claims asserted by JLT in this

action. *See, e.g., Medtech Prod. Inc. v. Ranir, LLC,* 596 F. Supp. 2d 778 (S.D.N.Y. 2008) (Karas, J.); *see also Mercer Health & Benefits LLC v. DiGregorio,* 307 F. Supp. 3d 326, 351 (S.D.N.Y. 2018); *Marsh USA Inc. v. Schuhriemen,* 183 F. Supp. 3d 529, 537 (S.D.N.Y. 2016); *Marsh USA Inc. v. Karasaki,* No. 08 CIV. 4195 (JGK), 2008 WL 4778239, at *14 (S.D.N.Y. Oct. 31, 2008). Further, even though it does not apply here, this Court also has experience applying California law in the context of non-solicitation and non-compete matters. *See, e.g., Prod. Res. Grp., L.L.C. v. Oberman*, No. 03 CIV. 5366 (JGK), 2003 WL 22350939, at *1 (S.D.N.Y. Aug. 27, 2003). This factor does not favor transfer.

### H.    The Weight Accorded to JTL's Choice of Forum

"It is axiomatic that a plaintiff's choice of forum is entitled to great deference." *Astor Holdings, Inc.,* 2002 WL 72936, at *13–14. This is true even where the plaintiff is not a resident of the chosen forum. *See Ontel Prod., Inc. v. Project Strategies Corp*., 899 F. Supp. 1144, 1154 (S.D.N.Y. 1995) (deferring to plaintiff's choice of forum in the S.D.N.Y. notwithstanding that it was "not based in New York" because the S.D.N.Y. had "a significant connection with the dispute"); *see also In re Nematron Corp. Sec. Litig.,* 30 F. Supp. 2d 397, 405 (S.D.N.Y. 1998) ("the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim").

Here, while JLT is not a resident of New York, its parent companies are. More importantly, NFP is based in the Southern District of New York, and the facts underlying JLT's claims against NFP have a substantial connection to this District. Specifically, NFP recruited and hired the Breaching Employees in New York, its New York-based executives learned of the Breaching Employees' post-employment obligations owed to JLT in New York, the Breaching Employees' supervisors, who are based in New York, either aided in the Breaching Employee's tortious

conduct or intentionally failed to take action to stop it, and two New York clients were improperly diverted from JLT to NFP (Weber Decl., Ex. A-I; Compl., *passim*). Given this strong connection to New York, and the fact that the other "factors are equally balanced," JLT is entitled to its choice forum. *In re Nematron Corp. Sec. Litig.,* 30 F. Supp. 2d at 405.

## I.        Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances

NFP argues that trial efficiency and the interest of just favor transfer because there is a pending related action in the transferee district (Def. Mem. at 14). But, the fact that another related litigation is pending in another jurisdiction is not alone sufficient to transfer an action. *Document Techs., Inc. v. West*, No. 17-CV-2405 (JSR), 2017 WL 1743938, at *4 (S.D.N.Y. Apr. 24, 2017); *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007), *aff'd sub nom. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010). The claims asserted in this action are against NFP, and not the four employees. The specific conduct at issue relates to NFP's culpability, the decisions that were made at its Madison Avenue corporate offices, and the losses that occurred in New York, and across the country. The California action concerns the actions of four individuals, including their decision to breach their contractual and common law duties to JLT and the host of causes of action that hinges on their conduct, not NFP's. Further, this action concerns the actions, omissions, motivations and knowledge of an entire corporation (NFP). The fundamental conduct at issue here is centered in New York, with only incidental and underlying facts occurring in California.  This factor does not necessitate a transfer.

Accordingly, the above factors as a whole weigh against transfer or, at worst, are neutral, NFP has not met its burden of demonstrating by clear and convincing evidence that transfer is appropriate. Its motion to transfer should be denied.

## II.     New York Law Applies to JLT's Claims

New York law, not California law, applies to JTL's claims. To determine what jurisdiction's law applies, the Court must first decide whether there is an "actual conflict" between the laws of the relevant jurisdictions. *See Bigio v. Coca-Cola Co.*, 675 F.3d 163, 171 (2d Cir. 2012). If no actual conflict exists, then the Court may apply New York law. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012); *Innoviant Pharmacy, Inc. v. Morganstern*, 390 F. Supp. 2d 179, 187 (N.D.N.Y. 2005) (applying New York law when the interests of Pennsylvania and New York were not "materially different.").

Once a Court decides that there is a conflict of laws, the Court considers which state has a "greater interest" in the litigation. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 47 (2d Cir. 2013). When determining what jurisdiction has the "greater interest" in conduct-regulating torts such as those asserted in this action, Courts consider the "locus" of the tortious conduct. *See id.; Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 399 (S.D.N.Y. 2018).

### A.     There Is No Conflict Between New York and California Law.

JLT's causes of action are predicated on its allegations that (a) NFP knew and aided in the Breaching Employees' violation of common law and contractual duties owed to JLT by actively soliciting clients and employees while still employed with JLT; (b) NFP retained confidential information, refusing to return information despite understanding Breaching Parties' contractual obligations requiring return of the information; and (c) NFP knew of and aided the Breaching Employees' use of JLT's confidential information to obtain an unfair advantage over JLT and to solicit its clients. These actions are prohibited under both New York and California law.

First, California's public policy against non-competition clauses "does not apply in the context of preventing employees from misappropriation of employers' trade secrets." *Ayco Co.,*

*L.P. v. Frisch,* 795 F. Supp. 2d 193, 201 (N.D.N.Y. 2011). Confidentiality agreements, such as the type that the Breaching Employees' signed, are enforceable in California. *See, e.g., Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2017 WL 588390, at *8-9 (S.D. Cal. Feb. 14, 2017) (noting the State of California's interest in enforcing confidentiality agreements aimed at protecting nonpublic personal information, confidential business information "that may not qualify for trade secret protection" and in promoting "commercial ethics"); *Estee Lauder Companies Inc. v. Batra,* 430 F. Supp. 2d 158, 173 (S.D.N.Y. 2006) (explaining that "restrictive covenants are enforceable under California law where there has been a misappropriation of trade secrets"). Nor does California restrict covenants not to compete or not to solicit clients or employees *during* employment. *See* Cal. Bus. & Prof. Code § 16600; *see also Youngevity Int'l Corp. v. Smith*, 224 F. Supp. 3d 1022, 1031-32 (S.D. Cal. 2016) (holding Cal. Bus. & Prof. Code § 16600 applies only to *post-employment* restrictions and not to restrictions during employment). And, in California, an entity may not knowingly aid in an employee's breach of their contractual and common law duties to their employer. *See e.g., SMC Networks Inc. v. Hitron Tech. Inc.,* 2013 WL 12114105, *1, 10 (C.D. Cal. 2013). As described herein and further below, these actions are illegal in both California and New York, and therefore no conflict amongst the laws exist and New York law should apply.

**B.      Even if There Were A Conflict of Laws, New York Has the Greater Interest in the Litigation, So New York Law Applies.**

Even if there were countervailing interests at play (which there are not), New York has the greater interest in this litigation. First, New York has a strong "recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world," which "naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here." *See Estee Lauder Companies, Inc.,* 430 F. Supp. 2d at 174 (applying New York law to an action to enforce a *non-*

*competition* clause, even though Defendant lived and worked in California and non-competition clauses are unenforceable in California per state public policy). New York's interest in regulating business conduct within the state is particularly strong here where NFP is headquartered in New York.[3] *See* Compl. ¶ 17.

Although NFP attempts to characterize the "conduct" underlying its tortious acts as having occurred in California, the Complaint alleges otherwise and facts are to the contrary. Several of the individual Breaching Parties were based in New York (*see* Compl. ¶ 53.) Two of the clients mentioned in the Complaint that the Breaching Employees impermissible diverted from JLT, with NFP' knowing aid are based in New York (Compl. ¶ 98 (Client A - Bronx), ¶ 32 (Client B – Brooklyn)).

More importantly, NFP is headquartered in New York, and therefore the decisions relevant to this dispute occurred in New York (Compl. at ¶ 17); *see also In re Thelen LLP,* 736 F.3d 213, 220 (2d Cir. 2013) (finding defendant's place of business relevant to a choice-of-law analysis pertaining to conduct-regulating tort). In particular, NFP decided to interview and hire the Breaching Employees in New York, meeting with the Breaching Employees in NFP's Madison Avenue offices in New York (*see* Weber Decl., Ex. A, B); *see Ayco Co., L.P.,* 795 F. Supp. 2d at 201 (holding that New York had a greater interest in employee restrictive covenant litigation when "significant functions," including "deciding whether to hire or fire employees" was "located in New York"); *Licci,* 672 F.3d at 158 (concluding that New York had "the greatest interest in this litigation" when "all of the challenged conduct" "occurred in New York," where defendant "is headquartered and where [it] administer[ed] . . . services"). At least one of the Breaching Employees based in California directly reports to a manager in New York (*see* Weber Decl., Ex.

---

[3] In contrast, California does not have an interest in the extraterritorial applications of its statutes. *See infra* Point III.C.

I). The strong connections to New York, coupled with the state's interest in regulating the conduct of an entity headquartered in New York militate in favor of applying New York law to this action.

**C.    Even if New York Did Not Apply, California Law Does Not Apply to JLT's Claims.**

Even if the Court finds New York law does not apply, JLT's misappropriation claims would fall under the federal Defend Trade Secrets Act ("DTSA") because California's law does not apply extraterritorially. *See Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2017 WL 1436044,*6 (N.D. Cal. 2017) ("[t]he Court concludes that plaintiff's CUTSA claim is barred by the extraterritoriality doctrine, [which] presumes that 'the Legislature did not intend the statutes of this state to have force or operation beyond the boundaries of the state'") (citing *Norwest Mortg., Inc. v. Super. Ct*, 72 Cal. App. 4th 214, 222 (1999)); *see also O'Connor v. Uber Tech., Inc*., 58 F. Supp. 3d 989, 1003-04 (N.D. Cal. 2014) ("conclud[ing] that the choice-of-law provision in the Licensing Agreement does not overcome the presumption against extraterritorial application of California law.")

Therefore, the preemption provision in the California Uniform Trade Secrets Act ("CUTSA") (Cal. Civ. Code § 3426.7) would not apply to JLT's claims for tortious interference with existing and prospective business relationships (the first claim); tortious interference with contract (the second claim); and unfair competition (the third claim). The DTSA has no preemption provision at all, much less one analogous to the CUTSA's. *See* 18 U.S.C. § 1838 ("[e]xcept as provided in section 1833(b), this chapter shall not be construed to preempt or displace any other remedies, whether civil or criminal, provided by United States Federal, State, commonwealth, possession, or territory law for the misappropriation of a trade secret.") Because the DTSA does not preempt JLT's first through third claims for relief, Defendant's arguments that CUTSA preempts those without merit.

16

**D.     In the Alternative, A Decision on Choice of Law Is Premature at This Stage of the Litigation.**

In the alternative, the Court should decide that a choice of law analysis, which is a fact-intensive analysis, is premature at this early stage of litigation and this Court should decline to rule on this issue. *See Bristol–Myers Squibb Co. v. Matrix Labs. Ltd.,* 655 F. App'x 9, 13 (2d Cir. 2016) (holding that a choice of law analysis at an early stage of litigation was premature); *Meserole v. Sony Corp. of Am., Inc.* No. 08 CV. 8987 (RPP), 2009 WL 1403933, at *5 (S.D.N.Y. May 19, 2009) (same).

**III.    The Complaint Should Not Be Dismissed.**

**A.     Each of JLT's Claims Are Adequately Pleaded.**

**1.     JLT States a Claim for Tortious Interference with Existing and Prospective Business Relationships.**

To state a claim for tortious interference with business relations, Plaintiff must allege that (a) "defendant interfered with business relations existing between the plaintiff and a third party"; (b) either solely to harm the plaintiff or by dishonest, unfair, or improper means; and (c) the actions harmed the relationship. *In re MF Glob. Holdings Ltd. Inv. Litig.,* 998 F. Supp. 2d 157, 187 (S.D.N.Y. 2014), *aff'd sub nom. In re MF Glob. Holdings Ltd. Inv. Litig. (DeAngelis v. Corzine),* 611 F. App'x 34 (2d Cir. 2015). In support of its claim, JLT alleges that NFP interfered with existing business relationships (*see, e.g.,* Compl. ¶¶ 102-05, 112-15). JLT also claims that NFP was motivated by a "desire to obtain an unfair advantage in its competition with JLT" and has done so "with malice," and that NFP used wrongful means to interfere with JLT's business relationships to constitute an independent tort.

Specifically, JLT alleges that NFP did not return JTL's confidential information despite knowing of the Breaching Parties' contractual and common law obligations to JLT and thereby helping the Breaching Employees' breach those duties (*see* Compl. ¶¶ 112-15). JLT also alleged

that NFP knew about the Breaching Employees' contractual and common law responsibilities to JLT around the time that it hired the Breaching Employees, but decided to profit off of the Breaching Employees' wrongful conduct (*see, e.g.,* Compl. ¶ 102). Much more than mere "persuasion alone," NFP has taken JLT's confidential information, hired employees that it knew breached their confidentiality and non-solicitation agreements, and refused to return confidential information it knew it possessed. Therefore, the Complaint "identifies the alleged wrongful means" that NFP used to harm JLT. *Khmaladze v. Vorotyntsev,* No. 1:16-CV-8029-GHW, 2019 WL 1746006, at *4 (S.D.N.Y. Apr. 18, 2019). Consequently, contrary to NFP's weak protestations to the contrary, JLT has stated a claim for tortious interference with Prospective Business Relationships.[4]

### 2.   JLT States a Claim for Tortious Interference with Contracts.

To state a claim for tortious interference with contract, a plaintiff must allege that (a) defendant knew of a valid contract with a third-party, (b) defendant procured that third-party's breach without justification, and (c) there are resulting damages. *See Sokol Holdings, Inc. v. BMB Munai, Inc*., 726 F. Supp. 2d 291, 304 (S.D.N.Y. 2010), *aff'd in part*, 438 F. App'x 45 (2d Cir. 2011); *Wandering Dago Inc. v. N.Y.S. Office of Gen. Servs.,* 992 F. Supp. 2d 102, 132 (N.D.N.Y. 2014); *Am. Para Prof'l Sys., Inc. v. LabOne, Inc.,* 175 F. Supp. 2d 450, 457 (E.D.N.Y. 2001)

---

[4] Even if California law applies, JLT has stated a claim for interference with prospective economic advantage under California law. To state a claim for interference with prospective economic advantage, JLT must allege that: (1) the plaintiff and a third party were in an economic relationship that would have probably resulted in an economic benefit to the plaintiff; (2) the defendant knew of the relationship; (3) the defendant engaged in independently wrongful conduct to disrupt the relationship; (4) the relationship was disrupted; and (5) the plaintiff was harmed as a result. *Youst v. Longo*, 4 Cal.3d 64, 71, n.6 (Cal. Sup. Ct.1987). Here, JLT has alleged facts in addition to NFP's misappropriation sufficient to establish this claim for relief.  Specifically, JLT alleged that the Breaching Employees solicited business for NFP while still employed by JLT, hid their improper conduct and misrepresented their actions to JLT, (Compl., ¶ 71) and that NFP knew of the breach of their common law and contractual obligations, benefitting and unjustly enriching NFP at JLT's expense. (Compl. ¶¶ 13, 123-24). These allegations are more than sufficient to state a claim for interference with existing and prospective economic relationships under California law. *See SMC Networks*, 2013 WL 12114105 at *10-12 (holding that allegations that the employer-defendant "assist[ed]" or "encourage[ed]" breach of individual defendants' fiduciary duties stated a claim for interference with prospective economic relationships); *see also ChormaDex, Inc*., 369 F. Supp. 3d at 989; *Zayo Group*, 2013 WL 12201401 at*4-5.

(citing *Lama Holding Co. v. Smith Barney, Inc.,* 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76 (1996)).

NFP wrongly argues that JLT failed to state a claim under New York law because (a) the contracts are "not valid," and (b) the Complaint fails to plead that NFP engaged in "improper conduct," knew of the relevant contract, and procured a breach. *See* Def. Mem. at 23, n. 24.

First, the Breaching Employees' agreements are valid, even under California law. Confidentiality agreements are enforceable in California. *See e.g., Erhart*., No. 15-CV-02287-BAS-NLS, 2017 WL 588390, at *8-9. Further, California does not restrict covenants not to compete or to solicit clients or employees *during* employment. *See* Cal. Bus. & Prof. Code § 16600; *see also Youngevity Int'l, Corp.*, 224 F. Supp. 3d at 1031-32 (holding Cal. Bus. & Prof. Code § 16600 applies only to *post-employment* restrictions and not to restrictions during employment). In New York, even more expansive restrictive covenants, such as non-competition agreements, are enforceable. *See Karasaki,* 2008 WL 4778239, at *14; *see also DiGregorio,* 307 F. Supp. 3d at 351 (holding that confidentiality agreements protect an even greater interest than other types of restrictive covenants); *Schuhriemen,* 183 F. Supp. 3d at 537 (enforcing non-solicitation and confidentiality agreements).

Second, JLT alleges each of the required elements. The Complaint plausibly alleges that NFP knew of the contracts that the Breaching Employees signed with their previous employer. *See* Compl. ¶ 102; *see also Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.,* 241 F. Supp. 2d 246, 279 (S.D.N.Y. 2002) (to state a tortious interference with contract claim, knowledge of a contract need not be precise, nor must a defendant need to have been aware of the legal particulars). More specifically, the Complaint alleges that NFP retained JLT's confidential information, including "client pricing, audit, loss, risk and coverage information" and refused to return it despite their knowledge that the Breaching Employees had confidentiality agreements, had downloaded JLT's

confidential information, and that NFP knew that Breaching Employees were under an obligation

to return the information[5] (*see* Compl. ¶¶ 63, 109-115). The Complaint also plausibly alleges that

NFP procured the Breaching Employees' violations of their contractual obligations by "inducing,

encouraging or helping" the Breaching Employees solicit JLT's clients, and "misappropriat[ing],

us[ing] and/or disclos[ing]" JLT's confidential information (*see* Compl. ¶ 127). JLT also alleged

that NFP's assistance in retaining and using JLT's confidential information and in soliciting clients

resulted in harm to JLT (*see, e.g.,* Compl. ¶¶ 81-105).

Finally, NFP's argument that JLT did not engage in "improper conduct" but rather acted

out of economic interest is an affirmative defense and is not relevant on a motion to dismiss. *See*

*Nahabedian v. Intercloud Sys., Inc.,* No. 15-CV-00669(RA), 2016 WL 155084, at *6–7 (S.D.N.Y.

Jan. 12, 2016) (collecting cases). In sum, NFP has plausibly stated a claim for tortious interference

with contract.[6]

### 3.    JLT States an Unfair Competition Claim.

Unfair competition is "any form of unlawful business injury [that] is tortious in nature"

and in essence "requires business rivals to compete honestly and fairly." *See Ivy Mar Co. v. C.R.*

---

[5] JLT may plead "in the alternative" such that its allegation that NFP "knew or should have known" survives a motion to dismiss even *if* constructive knowledge alone would otherwise be insufficient to state a claim. *See e.g. Wandering Dago Inc. v. N.Y.S. Office of Gen. Servs.*, 992 F. Supp. 2d 102, 132 (N.D.N.Y. 2014) (finding that tortious interference with contract claim survived motion to dismiss because one of the two alleged alternatives stated a claim).

[6] Even if California law applied, JLT has nevertheless stated its interference with contractual relations claim under California law. Similar to New York's tortious interference with contract claim, California law requires that plaintiff allege: (1) a valid contract between the plaintiff and a third party; (2) that defendant knew of the contract; (3) that defendant engaged in conduct to disrupt the contract; (4) that the relationship was disrupted; and (5) the plaintiff was harmed. *Pac. Gas & Elec. v. Bear Stearns & Co.*, 50 Cal.3d at 1118, 1126 (1990).

JLT has alleged facts establishing the necessary elements of this claim.  Specifically, JLT has alleged that NFP assisted and encouraged the Breaching Employees to breach their contractual duties not to solicit clients or employees while still employed by JLT, and that they facilitated and aided this conduct despite knowing that the Breaching Employees' were contractually obligated *not* to solicit employees or clients, and that JLT was harmed as a result (Compl., ¶¶ 71-80); *see also* in *CRST Van Expedited, Inc. v. Werner Enters.*, 479 F.3d 1099, 1105 (9th Cir. 2007) (holding that plaintiff's allegations adequately alleged tortious interference with contract based on defendant's unlawful solicitation of its competitors employees).

*Seasons Ltd.,* No. 95-CV-0508 (FB), 1998 WL 704112, at *12 (E.D.N.Y. Oct. 7, 1998) (internal quotations and citation omitted). To state an unfair competition claim, a plaintiff must allege that the defendant (1) misappropriated and used, (2) the plaintiff's property, (3) to compete against the plaintiff's use of the same property." *PLC Trenching Co., LLC v. Newton,* No. 6:11-CV-0515, 2011 WL 13135653, at *9 (N.D.N.Y. Dec. 12, 2011).

The Complaint here alleges each of these elements. The Complaint states that NFP misappropriated and used the confidential information that it possessed through its hiring of the Breaching Employees (*see* Compl. ¶¶ 112-15); *see also Ivy Mar Co.,*1998 WL 704112, at *13 (holding that even if the confidential information misappropriated isn't a bona fide trade secret, the "unauthorized physical taking and exploitation of internal company documents, including detailed customer information by an employee for use in his future business or employment" may constitute unfair competition). The Complaint also alleges that "the departures of these clients were the result of the improper download . . . use . . . [of] confidential information" and that NFP "assisted in" the Breaching Employees' violations of their Confidentiality Agreements (*see* Compl. ¶ 105). Therefore, JLT has adequately stated a claim for unfair competition under New York law.[7]

---

[7] Even if California law applied, JLT stated a claim under the California Unfair Competition Law. California's unfair competition law "provides a cause of action for parties injured by any 'unlawful, unfair or fraudulent business act or practice.'" Cal. Bus. & Prof. Code § 17200. It "embraces anything that can properly be called a business [act or] practice that at the same time is forbidden by law. [] Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 1143 (2003).

When a plaintiff asserts a cause of action for interference with prospective economic advantage/contract, the plaintiff has also "adequately alleged a violation by [the defendant] of the [unfair competition law.]" *CRST Van Expedited v. Werner Enter., Inc.,* 479 F.3d 1099, 1107 (9th Cir. 2007). In this action, JLT has sufficiently alleged its first and second claims for interference with prospective economic advantage and interference with contract. *See supra,* n. 3, 5. Because its third claim for relief is based on the same wrongful conduct, it has also alleged facts establishing its unfair competition claim for relief. *See CRST Van Expedited,* 479 F.3d 1099 at 1107.

### 4.   JLT States a Claim for Misappropriation of Confidential Information.

"To state a claim for misappropriation of confidential information, a plaintiff must allege that the defendant used the plaintiff's confidential information for the purpose of securing a competitive advantage." *Reed Const. Data Inc. v. McGraw-Hill Cos., Inc.,* 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010). JLT here pleaded that NFP used information that was wrongfully acquired by the Breaching Employees to solicit JLT's clients and thus secure an unfair competitive advantage (*see, e.g.,* Compl. ¶ 63 (identifying types of confidential information misappropriated), ¶ 49 (alleging that NFP obtained the names of clients and colleagues to solicit), ¶ 127 (alleging that NFP aided in the Breaching Employee's solicitation of JLT's clients). The elements of a misappropriation claim under New York law are similar to an unfair competition claim when based on the same set of facts, and therefore, as explained above, JLT has adequately alleged a misappropriation of confidential information claim. *See Geo Grp., Inc. v. Cmty. First Servs., Inc.,* No. 11-CV-1711 CBA, 2012 WL 1077846, at *3 (E.D.N.Y. Mar. 30, 2012) (noting that misappropriation claim based upon the same set of facts as an unfair competition claim alleging the misappropriation of confidential information are analyzed together).[8]

### B.   If California Applied to JTL's Claims, CUTSA Would Not Preempt JLT's Common Law Claims

Even if California's CUTSA applied to JLT's first to third claims for relief, which JLT does not concede, these claims are not preempted by the statute as a matter of law. CUTSA's preemption provision states:

> (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating

---

[8] Even if New York law did not apply to JLT's claim, JLT's misappropriation claim would still stand, whether under common law, the California Uniform Trade Secrets Act, or the federal Defense of Trade Secrets Act. Although NFP argues that the common law misappropriation claim is preempted by CUTSA, NFP does not argue that JLT has failed to state a claim under CUTSA or DTSA. Therefore, NFP concedes that JLT has stated a claim under both CUTSA and the DTSA.

trade secrets.

(b) This title does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code § 3426.7. This provision only preempts common law claims that are "'based on the same nucleus of facts as the misappropriation of trade secrets claim for relief.'" *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc*., 171 Cal. App. 4th 939, 958 (Cal Ct. App. 2009) (quoting *Digital Envoy, Inc. v. Google, Inc*., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005)). Common law tort claims are displaced by the CUTSA where they are either "based upon misappropriation of a trade secret . . . or they are based upon no legally significant events at all." *Silvaco Data Sys. v. Intel Corp*., 184 Cal. App. 4th 210, 236 (Cal. Ct. App. 2010). In other words, common law tort claims are displaced by the CUTSA where they "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Id*. at 240.

A common law tort claim is not displaced by the CUTSA where the alleged wrongdoing "is not based on the existence of a trade secret." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013) (holding that a conversion claim against a former employee who took documents with him upon leaving the plaintiff's employ was not displaced by the CUTSA, where the conversion claim could be based on the taking of "tangible property" that was not a trade secret). To determine whether a claim for relief is preempted, the Court will filter out allegations relating to the misappropriation of trade secret information. *See id.* at 506 (finding claim not preempted where it is based on conduct not involving misappropriation of a trade secret).

In this action, JLT's first through third claims for relief are not based exclusively on the existence of a trade secret, as NFP contends. *See Zayo Group LLC v. Hisa,* No. SACV 13–752–

JST (JPRx), 2013 WL 12201401,*4 (C.D. Cal. 2013) (merely incorporating allegations comprising trade secret misappropriation does not preempt allegations based on different facts). They are also based on NFP's knowing and intentional assisting and encouraging of JLT's employees to breach the fiduciary duties they owed to JLT. For example, JLT alleges that "immediately prior to their resignations, some or all of the Breaching Employees met with JLT clients to solicit business in violation of their contractual obligations and fiduciary duties" (*see* Compl., ¶ 71). JLT also alleges the Breaching Employees intentionally lied to JLT about their improper solicitation of JLT's customers and affirmatively took steps to hide their unlawful actions (*see* Compl., ¶¶ 72-80). This unlawful conduct is unrelated to their misappropriation of JLT's trade secret information. Accordingly, JLT's first through third causes of action are not preempted by the CUTSA even if it applied in this action. *Angelica Textile Servs., Inc.,* 220 Cal. App. 4th at 508.

Courts that have considered NFP's arguments in situations that are factually analogous to this action have uniformly concluded claims such as JLT's first through third claims are not preempted by the CUTSA. For example, in *SMC Networks, Inc..,* 2013 WL 12114105, at *10, individual defendants, former employees of the plaintiff, began working with a competitor to attempt to interfere with the plaintiff's relationships with its employees and customers. The Court denied a motion to dismiss by the new employer, a competitor of plaintiff, finding that sufficient allegations that the new employer-defendant "aided and abetted [the individual defendants'] breaches of fiduciary duties" and that "[t]his would constitute a separately wrongful act" for an intentional interference claim. *Id.* at *10-12.

Similarly, in *Zayo Group, LLC v. Hisa,* 2013 WL 12201401 (C.D. Cal. 2013), former employees of the plaintiff moved to dismiss a prospective economic advantage tort claim based on CUTSA preemption. The Court held that because the plaintiff alleged that the defendants'

interference included negotiating with the prospective client on behalf of the employer defendant, the claim was not preempted because those allegations extended beyond trade secret misappropriation. *See Zayo*, 2013 WL 12201401 at *5; *see also ChormaDex, Inc. v. Elysium Health, Inc.,* 369 F. Supp. 3d 983 (C.D. Cal. 2019) (claims that former employees breached their fiduciary duties for the benefit of a new employer are not preempted by the CUTSA); *AirDefense, Inc. v. AirTight Networks, Inc.,* 2006 WL 2092053 (N.D. Cal. July 26, 2006) (finding allegations in intentional interference claim – that the defendant made false representations to existing and potential customers – extended beyond claim for misappropriation of trade secrets). NFP's alleged conduct in this matter is analogous to the defendants' conduct in *SMC Networks, Zayo,* and *ChormaDex*. JLT's claims against NFP are likewise not preempted.

> **C.     Should the Court Grant Any Part of Defendant's Motion to Dismiss, the Court Should Grant JLT Leave to Amend Its Complaint.**

JLT requests that this Court provide it with leave to amend the Complaint should the Court be inclined to dismiss any part of JTL's claims. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (holding that leave to amend a Complaint is freely given and within a district court's sound discretion).

## CONCLUSION

For the reasons explained above, JLT respectfully requests that this Court deny NFP's motion in its entirety, with prejudice, or, in the alternative, provide JLT with an opportunity to amend its Complaint.

Date:   November 22, 2019
        New York, New York

/s/ A. Michael Weber
A. Michael Weber
Shawn Matthew Clark
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022-3298
212.583.9600
MWeber@littler.com
SMClark@littler.com

*Attorneys for Plaintiff*